CARLOND HAMMOND *v.* STATE OF ARKANSAS, EX REL JOHN DAVIS, SHERIFF

5311                                              424 S. W. 2d 861

Opinion delivered February 26, 1968
[Rehearing denied April 1, 1968.]

*Darrell Hickman,* for petitioner.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. General, for respondent.

PAUL WARD, Justice. This is a review of a refusal by the Circuit Court of White County to grant Carlond Hammond (Petitioner) a Writ of Habeas Corpus whereby he sought to evade extradition to the State of Louisiana. A brief statement of facts from which stems this litigation is set out below.

On May 30, 1967 the Governor of Louisiana signed requisition papers directed to the Governor of Arkansas asking for the return of Petitioner who was charged in 1964 with the crime of stealing $25,000 in Louisiana. On August 2, 1967 a hearing was held on the matter in the office of the Governor of Arkansas, and one week later the Governor of Arkansas issued a warrant to have Petitioner arrested by the sheriff of White County and placed in jail. Thereupon Petitioner applied for a Writ of Habeas Corpus in the Circuit Court of said county to obtain his freedom. A hearing was had, and on September 6, 1967 the trial judge denied the petition and remanded Petitioner to the custody of the sheriff of White County.

On September 22, 1967 Petitioner filed this Petition for a Writ of Certiorari, and now urges three grounds for a reversal of the trial court.

*One.* It is first contended "the Governor of Arkansas improperly delegated all responsibility for determining the validity of the extradition papers".

We find no merit in this contention which is based on the fact that Bob Scott (an agent or employee of the Governor) examined the requisition papers and found them adequate before the Governor signed the warrant of arrest.

Ark. Stat. Ann. § 43-3002 (Repl. 1964) provides that it is the duty of the Governor to have arrested and delivered to another state any person charged in that state with a felony who has fled from justice. Section 43-3004 provides that the Governor may call upon the Attorney

General to investigate or assist in investigating the "demand" and report to him. Section 43-3007 provides that if the Governor decides the "demand" should be complied with, "he shall sign a warrant of arrest. . . ."

We find nothing in the above statutes which forces a conclusion that the Governor *must* personally make the investigation or have it made by the Attorney General. It must be recognized that a governor has the right to rely on his agents or employees to make investigations and report their findings, and to rely thereon. This is consistent with his *right* to call on the Attorney General for assistance and advice if he deems it necessary. Obviously the legality of the Governor's action in signing the warrant of arrest in this case is not dependent on the source of the information upon which he acted.

*Two.* It is next argued that "The documents of 'demand' do not show probable cause. . . ."

Demand documents refer here to certain documents executed in Louisiana setting out the facts relative to the accusations against Petitioner. It is necessary therefore to set out below a brief summary of these documents.

(a) Morris Lucia who is a resident of Louisiana, in an affidavit sworn to before a District Judge of said state, stated, in essence: On May 13, 1964 Joe Fassulo, whom I knew, introduced me to Carlond Hammond (Petitioner) who told me he knew a "person" who had $200,000 in bills of large denominations and desired to exchange them (at a 40% discount) for bills of smaller denominations; Petitioner stated the deal was legitimate since the "person" had previously been in trouble with the revenue agents and feared circulation of the large bills might renew the trouble; a week later I was informed by Joe that Petitioner had arranged for me to meet the "person" at a hotel in Opelousas to effect an exchange of bills; Joe and I went to the hotel where I was told the "person" would not negotiate per-

sonally with me; Therefore, I gave Joe $25,000 to deliver to the "person"; About twenty minutes later Joe returned and said Petitioner took the money and "disappeared into the night". [On the same day affiant proceeded to have Petitioner charged with theft.]

(b)   On June 16, 1964 the Governor of Louisiana issued a signed document stating that he was informed Petitioner had taken refuge in Arkansas; that he had made an application to the Governor of Arkansas for the surrender of Petitioner, and had appointed an Agent to take Petitioner in custody. [All the above mentioned documents were forwarded to the Governor of Arkansas.]

For reasons, not made entirely clear in the record, the extradition proceedings were delayed until May 30, 1967 when the Governor of Louisiana made another application to the Governor of Arkansas, based on the documents previously mentioned.

Based on the above documents, it is our opinion that the trial court was correct, and that the extradition of Petitioner was justified and legal. Conceding that Lucia did not actually see Petitioner take his money, he did know and swear that Petitioner was an active participant in the scheme to deprive him of his money. This fact would make Petitioner a participant in the crime charged. Ark. Stat. Ann. § 43-3002 (Repl. 1964), in part reads:

". . . it is the duty of the Governor of this state to have arrested and delivered up to the Executive Authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state."

The pertinent Louisiana law is clear. L. S. A. § 14:23 reads:

"The parties to crimes are classified as (1) Principals and (2) Accessories after the fact."

L. S. A. § 14:24 reads:

"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."

*Three.* Again we are unable to agree with the contention that this proceeding violates due process under the doctrine of res judicata. Petitioner here relies on the alleged fact that previously an attempt was made to have him extradited but failed because of a lack of sufficient evidence.

Conceding the above allegation to be true it would not, in our opinion, constitute res judicata. Black's Law Dictionary defines "Res judicata" as: "A matter adjudged; a thing judicially acted upon or decided; a thing or matter settled by judgment." In Am. Jur. (Extradition) § 57, there appears this statement:

"Where a first application for extradition is refused on the ground that the evidence presented is insufficient, it leaves the proceeding in the same condition as in other cases of preliminary examination, and there may be a second inquiry. The release of a person on the ground of informality or mistake in the proceedings is not a bar to a subsequent arrest on perfected papers or legal proceedings."

The case of *Letwick* v. *State*, 211 Ark. 1, 198 S. W. 2d 830, dealt with this issue on facts similar to those of this case, and the Court said:

"There is no question of former jeopardy in this case. Indeed the question is whether appellant shall

be returned for a trial to the state where the offense is alleged to have been committed."

The Petition is denied.