James CADLE and Robert PIERCE *v.*
Bill CAUTHRON, Sheriff of Sebastian County,
Arkansas

CR 79-98                                    584 S.W. 2d 6

Opinion delivered July 9, 1979
(In Banc)

420

*Don Langston,* for appellants.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. Appellants were arrested in Logan County, Arkansas, without a warrant, on February 8, 1979. They were apprehended by local, state and federal officers and taken to Paris, Arkansas, for questioning. A few hours later they were taken to Franklin County, placed in jail, and moved to the Sebastian County jail on February 13, 1979, where they remain at this time. Appellants admit the sheriff stated he was holding them for Florida. A few days later a deputy sheriff requested them to sign extradition papers in order to be returned to Florida but the request was rejected. Appellants deny any knowledge of the nature of the cause for which they were being held or having been given an opportunity to go before a magistrate. On April 25, 1979, the Governor of Arkansas issued his arrest warrant to the Sheriff of Sebastian County wherein he directed the sheriff to hold the appellants for the executive authorities in Florida. Attached to the warrant were supporting papers for the requisition by the Governor of Florida. Also, a letter from the Governor of Arkansas was delivered to appellants stating they were being held as fugitives and further explaining their rights. On April 30, 1979, they filed a petition for a writ of habeas corpus. May 1, 1979, the Circuit Court of Sebastian County denied the petition. Appellants appeal on the grounds of denial of constitutional and statutory rights by reason of never having been afforded a preliminary hearing before a magistrate nor being allowed to appear for an extradition hearing before the governor or his representative.

Extradition hearings are not criminal proceedings even though much of the subject matter dealt with is criminal in nature. In order to understand extradition proceedings it is necessary to set out the constitutional and statutory authorities affecting such matters. The U.S. Const., art. 4 § 2, cl. 2, states:

> A person charged in any State with Treason, Felony or other Crime, who shall flee from Justice and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

Extradition proceedings are matters involving the various states and territories as well as cooperating foreign countries. Therefore, federal statutes are controlling to a large extent. 18 USC § 3182 provides:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

From reading the above authorities it is apparent the only requirement the United States Constitution contains is that upon demand of the executive authority of the demanding state the executive authority of the asylum state is bound to deliver a fugitive. The United States Code adds very little

to the constitutional requirement. It does add something to the procedure in that it requires the executive authority of the demanding state or territory to produce a certified or authenticated copy of the indictment, or affidavit, before a magistrate, charging the person being sought with having committed treason, felony, or other crime within the demanding state, whereupon the executive authority of the asylum state is required to cause such accused to be arrested and secured for the purpose of being delivered to the demanding state. Neither the United States Constitution nor the United States Code require any particular type proceeding concerning extradition matters. Therefore, the details for extradition proceedings are left to the various states and territories. Arkansas has adopted the Uniform Criminal Extradition Act, which is 1935 Ark. Acts No. 126, and codified as Ark. Stat. Ann. §§ 43-3001 - 3030 (Repl. 1977). This statute provides it is the duty of the Governor of Arkansas to have the person arrested delivered to the executive authority of the demanding state. It also sets out the requirements of the demanding state. We do not discuss the requirements of the demanding state because appellants admit the validity of the actions of the executive authority of Florida in this case. In passing, we might mention that upon examination the requisition and supporting papers completely comply with the Uniform Criminal Extradition Act.

Ark. Stat. Ann. § 43-3007 (Repl. 1977) provides that if the Governor of Arkansas decides to comply with the requisition he shall direct the sheriff, marshal, coroner, or any other person he deems fit to arrest the accused. The warrant must state facts necessary to the validity of the issue. Ark. Stat. Ann. § 43-3010 (Repl. 1977) requires the accused must be notified of the nature of the demand; the crime for which he is charged; his right to demand counsel; and his right to contest the extradition. If the accused, or anyone on his behalf, contest the extradition, the accused shall be taken forthwith before a judge of a court of record who shall set a time within which the accused may apply for a writ of habeas corpus. When the petition for habeas corpus is filed, there must be a notice of the time and place for the hearing on said petition and such notice shall be given to the accused and the prosecuting attorney and to the agent of the demanding state.

Appellants also argue that Ark. Stat. Ann. § 43-3014 (Repl. 1977) gives a person who is arrested without a warrant the right to be taken before a judge or magistrate with all practicable speed. They further argue that Ark. Stat. Ann. § 43-3016 (Repl. 1977) provides an accused shall be admitted to bail unless the offense with which he is charged is punishable by death or life imprisonment.

We concede the last mentioned procedures have not been met in this case. The requisition from Florida shows upon its face the appellants are not charged with an offense which is punishable by death or life imprisonment. We also note that the record does not contain any allegation that appellants demanded any hearing prior to the filing of the petition for a writ of habeas corpus. Due to the nature of extradition proceedings and their heavy reliance upon federal authority, we will first discuss the facts of this case as related to federal procedures.

As previously noted, neither the constitution nor the United States Code require a hearing before a court of record or a magistrate nor do they require appellants be admitted to bail. A case somewhat analogous to the present one was considered by the United States Supreme Court in *Gerstein* v. *Pugh*, 420 U.S. 103 (1975). In *Pugh* the court attempted to find a standard which balanced the individual's right to liberty and the state's duty to control crime. The court held that a probable cause determination is not a "critical stage" of the prosecution which would require appointment of counsel to represent the accused. Such hearings were held to be nonadversary in nature. If this be true in an ordinary criminal proceeding, certainly it is true in extradition hearings where the statutes and proceedings are liberally construed.

We think we should call attention to the case of *Biddinger* v. *Commissioner of Police*, 245 U.S. 128 (1917). This was an extradition proceeding wherein the accused brought a habeas corpus petition to obtain his discharge on the ground that he was not a fugitive. The court pointed out that extradition had been mentioned in the Articles of Confederation of 1781 in almost the identical terms as they are embodied in art. 4 § 2 of the present constitution. The court explained that an extradition proceeding is for the purpose of providing a sum-

mary executive proceeding by the use of which the various states could promptly aid each other in bringing to trial persons accused of crime by preventing their finding asylum in another state in order to avoid the process of justice in the state in which the crime was allegedly committed. The opinion further pointed out the extradition clause was designed to eliminate boundaries of the state, in a sense, to the end that each may reach across its border and bring offenders of its law to a speedy trial regardless of what portion of the country the fugitive may have taken refuge. This being the purpose, the laws on this subject are not to be narrowly and technically construed by the courts as if they were penal laws but should be liberally construed to the effect that their purpose would be obtained without unreasonable delay. It is to be remembered that one held for the executive authority of another state is not being delivered to a foreign nation where his rights might be entirely violated but is simply being transferred to a sister state where he remains under the full protection of the federal and state constitutions and will be guaranteed all of his rights in the state to which he is returned and where the offense was allegedly committed. In *Appleyard v. Massachusetts,* 203 U.S. 222, 227, (1906), the Court stated:

> A person charged by indictment or by affidavit before a magistrate with the commission within a State of a crime covered by its laws, and who, after the date of the commission of such crime leaves the State—no matter for what purpose or with what motive, nor under what belief—becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another State must be delivered up by the Governor of such State to the State whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the Governor of the State from which the accused departed. Such is the command of the Supreme law of land, which may not be disregarded by any State.

In *Innes* v. *Tobin,* 240 U.S. 127 (1916) it was held that the constitutional and federal statutory provisions were enacted for the purpose of controlling interstate rendition in extradition proceedings and their provisions were intended to be

dominant and, so far as they operated, controlling and exclusive of state power. Therefore, we say that if there is a conflict between the state and federal authorities, federal authorities control in extradition proceedings.

We return to Arkansas cases for further discussion. We held in *Dillard* v. *State,* 260 Ark. 743, 543 S.W. 2d 925 (1976), that where an accused was afforded the right to be taken before a magistrate immediately for the purpose of fixing bail it was directory and not mandatory. Also, in *Clubb* v. *State,* 230 Ark. 688, 326 S.W. 2d 816 (1959), we held an arrest without a warrant was valid if the officer had reasonable grounds to believe that the accused had committed a felony and, where the accused subsequently entered a plea, he had waived the right to object to his arrest without a warrant. We dealt with an extradition proceeding in the case of *Glover* v. *State,* 257 Ark. 241, 515 S.W. 2d 641 (1974), and therein held that laws pertaining to extradition were to be construed liberally rather than strictly as they are in criminal statutes. We reached the same result in *Hammond* v. *State,* 244 Ark. 186, 424 S.W. 2d 861 (1968), and *Harris* v. *State,* 259 Ark. 187, 532 S.W. 2d 423 (1976). The case of *Bolden* v. *State,* 262 Ark. 718, 561 S.W. 2d 281 (1978), concerned the failure to take a person before a judge or magistrate without delay. We noted that Rule 8.1, Ark. Rules of Criminal Procedure (1976), does not dictate dismissal of charges upon the failure to afford an accused a hearing before a magistrate as required by rule or statute. We further held that illegal arrest or detention did not void a subsequent conviction.

From the above authorities it can easily be seen that appellants had the right to be taken before a magistrate and to have bail fixed at any time prior to the issuance of the governor's warrant. However, after the issuance of the governor's warrant the only proceeding available to an accused, in an extradition proceeding, is by petition for a writ of habeas corpus and the only matters for the court to consider in such case are the identity of the accused and if he is a fugitive. *Glover,* supra. The appellants were afforded this hearing and the court made a ruling adverse to their contention. Both appellants admitted their identity and that they escaped from the Florida prison.

The Governor of the State of Arkansas is not required by the constitution or statute to make an investigation outside the record nor to hold a hearing to allow the accused to present his views. If the papers furnished by the demanding state supply the necessary information, it is not necessary for the governor to look further. The requisition and supporting papers furnished by the executive authority of Florida clearly meet the constitutional and statutory requirements to allow the Governor of Arkansas to issue his warrant. The appellants have no constitutional right to an extradition hearing before the governor. *Munsey* v. *Clough*, 196 U.S. 364 (1905). We agree with the appellee that a hearing before the governor is a matter of grace, not a matter of right. Everything which has been said concerning a fugitive from justice applies equally to an escapee from prison who has fled the state of his conviction. We, therefore, affirm the denial of bail and habeas corpus in this case and state that the executive authority for the State of Arkansas is at liberty to return the appellants to the fugitive state whenever the opportunity arises.

Affirmed.