**Thomas Edward MACURDY,
Petitioner-Appellant,**

**v.**

**Brad LEACH, Sheriff of Boulder County,
State of Colorado,
Respondent-Appellee.**

**Richard Allen REEDY,
Plaintiff-Appellant,**

**v.**

**Brad LEACH, Sheriff of Boulder County,
State of Colorado, Defendant-Appellee.**

**Nos. 82SA124, 82SA184.**

Supreme Court of Colorado,
En Banc.

April 18, 1983.

Rehearing Denied May 9, 1983.

Mary G. Allen, Allen, Foreman & Mueller, Denver, for petitioner-appellant Macurdy.

Steven K. Jacobson, Deputy State Public Defender, Boulder, for plaintiff-appellant Reedy.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Clement P. Engle, Asst. Atty.

Gen., Denver, for Brad Leach, Sheriff of Boulder County.

DUBOFSKY, Justice.

The two petitioners in these consolidated appeals from the Boulder County district court raise the same issue: the propriety of the governor's delegation of his authority to review and sign extradition documents. The district court approved the delegation and discharged the writs of habeas corpus. We affirm the district court orders.

Colorado authorities separately served the petitioners, Macurdy and Reedy, with Colorado governor's warrants as a result of extradition proceedings initiated against them in Pennsylvania and Michigan, respectively. The petitioners challenge the warrants on two grounds: the governor's failure to personally review the demanding state's requisition or approve the issuance of his warrant, and his failure to personally sign the warrant. Stipulated evidence at the hearings on the habeas petitions showed that the governor delegates his authority to review extradition requests to an assistant attorney general who ascertains the legal sufficiency of the documents before sending them to the governor's extradition secretary with an extradition request. The extradition secretary types the appropriate information into blank extradition documents which contain the governor's facsimile signature, affixes the state seal, and mails the completed documents to the clerk of court in the county where the fugitive is held. It is undisputed that the governor takes no part in any of these actions.

The Uniform Criminal Extradition Act, section 16–19–101 et seq., C.R.S.1973 (1978

Repl.Vol. 8 and 1982 Supp.), charges the governor with responsibility for the extradition process. Section 16–19–108, C.R.S. 1973 (1978 Repl.Vol. 8), provides:

> If the governor decides that the demand shall be complied with, he shall sign a warrant of arrest, which shall be sealed with the state seal, and be directed to any peace officer or other person whom he may think fit to entrust with the execution thereof. . . .

Under section 16–19–102(2), C.R.S.1973 (1978 Repl.Vol. 8), however, "governor" is defined as including "any person performing the functions of governor by authority of the law of this state."

By executive order dated August 7, 1980, Governor Lamm delegated his statutory and constitutional extradition authority to the extradition secretary, the Attorney General and Assistant Attorneys General, and his legal advisor.[1] The executive order relied upon this Court's decision in *Whittington v. Bray,* 200 Colo. 17, 612 P.2d 72 (1980).

In *Whittington,* the petitioners challenged the governor's failure to participate in the issuance of the governor's warrant. We declined to address the issue because it was raised for the first time on appeal, but noted that far from forbidding delegation of the governor's extradition authority, state law contained an expansive definition of the persons empowered to carry out extradition duties. *See* section 16–19–102(2). Moreover, we stated that " . . . it would not be proper for the judiciary to tell the Governor how to delegate his authority in ex-

1. The executive order provides, in relevant part:

"1. The Extradition Secretary within the Governor's Office is delegated authority to affix my signature to all requisitions, warrants, and other extradition documents requiring my signature, after determining that pertinent procedures and requirements have been followed and met.

2. The Attorney General for the State of Colorado is authorized to conduct investigations and reviews of extradition matters through Assistant Attorneys General.

3. The withdrawal of any warrant or requisition issued by my office may only be done upon my personal review and signature. However, a warrant or requisition may be held in abeyance temporarily by action of the Extradition Secretary upon the recommendation of an Assistant Attorney General or my Legal Advisor.

4. My Legal Advisor shall have the same authority under this executive order as the Extradition Secretary and the Attorney General."

tradition matters." [2] *Id.,* 612 P.2d at 74. While these comments in *Whittington* were *dicta,* they were an accurate statement of the pertinent law.

The petitioners argue that to permit their extradition without the governor's personal participation in reviewing and signing the documents would contravene the requirement of section 16–19–108 that the governor issue the warrant. This argument ignores the express language of section 16–19–102(2), which, coupled with the executive order of August 7, 1980, authorizes the delegation of extradition duties to the state officials who acted upon the requisitions of the petitioners in this case.

The petitioners also contend that the governor's personal participation in the extradition process is necessary to ensure that extradition documents receive careful consideration to guarantee their accuracy and authenticity. This argument proves too much. The degree of scrutiny which the petitioners seek—and which the technical nature of the process requires—can best be rendered by state officials whose primary responsibilities and area of expertise are extradition matters. By delegating authority to an extradition secretary and the Attorney General, the governor effectively advances the policy goal which the petitioners desire.

Nothing in the federal extradition law precludes the delegation of executive authority which the petitioners challenge. *See* 18 U.S.C.A. § 3182 (1969). Rather, federal law contemplates that the extradition process be a "summary and mandatory executive proceeding" designed to "enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed." *Michigan v. Doran,* 439 U.S. 282, 288, 287, 99 S.Ct. 530, 535, 534, 58 L.Ed.2d 521 (1978). Again, the governor's delegation actually furthers the purpose of the extradition process.

Other jurisdictions which have considered the matter likewise have held that the governor properly may authorize others to perform all aspects of processing extradition demands. *Hammond v. State,* 244 Ark. 186, 424 S.W.2d 861 (1968) *cert. denied* 393 U.S. 839, 89 S.Ct. 116, 21 L.Ed.2d 109 (1968); *Hudson v. State,* 388 So.2d 577 (Fla.App. 1980); *People ex rel. Jolley v. Koepel,* 42 Ill.2d 257, 246 N.E.2d 247 (1969); *Ex parte Scarbrough,* 604 S.W.2d 170 (Tex.Crim.App. 1980).

We conclude that the district court correctly ruled that the governor may delegate his extradition authority to state officials and that the Court properly discharged the writs.

Judgments affirmed.

---

2. *See Steinman v. Caldwell,* 628 P.2d 110 (Colo. 1981). In *Steinman,* we held that section 16–19–108 imposes no obligation that the governor or his delegee investigate the personal circumstances of the individual subject to extradition. "In *Whittington v. Bray,* we concluded that it is improper for the judiciary to tell the Governor how to delegate his authority in extradition matters. It is no less improper for the judiciary to tell the governor, once he has delegated his authority, how the delegated authority should be exercised." 628 P.2d at 111 (citation omitted) (footnote omitted).