DETROIT CITY COUNCIL v STECHER

Docket No. 79368. Argued November 3, 1987 (Calendar No. 3). Decided March 18, 1988.

The Detroit City Council brought an action in the Wayne Circuit Court against Walter I. Stecher, the city budget director, seeking a writ of mandamus directing the defendant to publish and implement the 1983-84 city budget as amended by the council. The court, Harry J. Dingeman, Jr., J., granted summary judgment for the defendant, finding that the city council did not have the authority to amend a previously adopted budget by making appropriations transfers not requested by the mayor. The Court of Appeals, T. M. Burns, P.J., and Beasley and Pajtas, JJ., reversed in an opinion per curiam (Docket Nos. 81675, 81729). The defendant appeals.

In an opinion by Justice Archer, joined by Chief Justice Riley and Justices Levin, Brickley, Cavanagh, and Boyle, the Supreme Court held:

The Detroit City Council may not invoke the provisions of the Uniform Budgeting and Accounting Act to acquire authority prohibited to it by the Detroit City Charter. During a fiscal year, where it becomes apparent that a balanced budget, as required under the act, will not be achieved, the mayor has the responsibility and the power to make recommendations to the council for appropriations transfers to achieve a balance. The city council may accept or reject the recommendations, but it may not unilaterally amend the mayor's proposals. The provisions of the city charter do not conflict with those of the Uniform Budgeting and Accounting Act and may be read together with those of the act to provide for orderly budget amendment in the face of an impending budget deficit.

1. The Detroit City Charter provides budgeting procedures for the city, clearly distinguishing between the powers of the city

REFERENCES

Am Jur 2d, Municipal Corporations §§ 580, 581.

Doctrine of de facto existence or powers of municipal corporation as applicable to amendment or revision of charter. 7 ALR2d 1407.

See also the annotations in the Index to Annotations under Municipal Corporations.

council in the initial budget adoption process and those of the council subsequent to the initial adoption of a budget. During a fiscal year the council is limited to responding to specific written budget requests from the mayor. There is no authorization in the charter for the council to initiate its own budget amendment proposals or to amend those submitted by the mayor.

2. The Uniform Budgeting and Accounting Act establishes a uniform budgeting system for local units of government and provides procedures for amending the budget in the event that it becomes apparent that a deficit will develop during a fiscal year. Under the act, the mayor is required to recommend appropriations transfers to the city council so as to prevent expenditures from exceeding available revenues for that fiscal year. However, the act does not require that the city council have the authority to unilaterally amend the recommendations of the mayor before adopting them in the form of a resolution, although it may reject the mayor's recommendations, thereby requiring the mayor to develop further recommendations. It is the mayor's recommendations that generate a subsequent budget amendment resolution. The separation of powers and duties set forth in the city charter is not inconsistent with the act.

3. The provisions of the city charter may be harmonized with those of the UBAA. When it becomes apparent during a fiscal year that the budget for the city will not balance, the mayor has the responsibility and power to make recommendations to the city council for appropriations transfers in order to achieve a balanced budget to comply with the act's provisions. The council only may accept or reject the proposals; it may not unilaterally amend the proposals before submitting them to the mayor for final approval and implementation.

4. In this case, the city council may not invoke the provisions of the UBAA to request a writ of mandamus against the executive branch of city government regarding the implementation of the budget amendments at issue.

Reversed.

Justice GRIFFIN, dissenting, stated that the Detroit City Council has the authority and responsibility to amend recommendations submitted by the mayor for dealing with an impending deficit in the general budget as it deems necessary, subject to the authority of the mayor to veto any amendment. The Uniform Budgeting and Accounting Act places an affirmative duty upon the city council as the city's legislative body to correct an impending deficit, placing the final responsibility

upon the council to amend the general appropriations when deviation from the adopted budget becomes necessary to avoid a deficit. In this case, the council acted properly to fulfill its duties under the UBAA and did not violate any provisions of the city charter.

153 Mich App 601; 396 NW2d 444 (1986) reversed.

1. MUNICIPAL CORPORATIONS — DETROIT CITY COUNCIL — UNIFORM BUDGETING AND ACCOUNTING ACT — BUDGET DEFICITS.

During a fiscal year, where it becomes apparent that a balanced budget, as required under the Uniform Budgeting and Accounting Act will not be achieved, the Mayor of Detroit has the responsibility and the power to make recommendations to the Detroit City Council for appropriations transfers to achieve a balance; the council may accept or reject the recommendations, but it lacks authority to unilaterally amend the mayor's proposals or to amend a previously adopted budget by making transfers of appropriations not authorized by the mayor (MCL 141.437; MSA 5.3228[37], Detroit City Charter, § 8-211).

2. MUNICIPAL CORPORATIONS — DETROIT CITY CHARTER — UNIFORM BUDGETING AND ACCOUNTING ACT — BUDGET DEFICITS.

The provisions of the Detroit City Charter do not conflict with those of the Uniform Budgeting and Accounting Act and may be read together with those of the act to provide for orderly budget amendment in the face of an impending budget deficit (MCL 141.437; MSA 5.3228[37], Detroit City Charter, § 8-211).

*Colista, Urso, Adams & Dettmer, P.C.* (by *F. Philip Colista* and *Robert W. Palmer*), for the plaintiffs.

*Donald Pailen,* Corporation Counsel, and *Honigman, Miller, Schwartz & Cohn* (by *James K. Robinson, Jay E. Brant,* and *Lore A. Rogers*) for the defendant.

ARCHER, J. This case requires that we determine the respective powers and duties of the mayor and city council for the City of Detroit when the city budget must be amended to comply with the balanced budget provisions of the Uniform Budgeting and Accounting Act (UBAA), MCL 141.421 *et seq.;*

MSA 5.3228(21) *et seq.* As a preliminary inquiry, we must determine whether the city council complaint seeks to enforce rights granted to the council pursuant to the UBAA or the Detroit Charter or both. In addition, it must be determined whether the respective powers and duties existing pursuant to the Detroit Charter conflict with those created by the UBAA. Finally, it must be determined whether the city council has the authority to amend a previously adopted budget by making appropriations transfers not requested by the mayor.

We hold that during the course of a fiscal year, the council is limited by the Detroit Charter to responding to specific written requests for budget appropriations transfers from the mayor. Detroit Charter, § 8-211. There is no authorization in the charter for the council to initiate its own budget amendment proposals or to amend those submitted by the mayor.

We find that the provisions of the Detroit Charter may be harmonized with those of the UBAA. When, during a fiscal year, it becomes apparent that the budget of the City of Detroit will not balance, the mayor has the responsibility and the power to make recommendations to the city council for appropriations transfers in order to achieve a balanced budget to comply with the provisions of the UBAA. MCL 141.437; MSA 5.3228(37). The council may only accept or reject the proposals as submitted by the mayor. *Id.,* Detroit Charter, § 8-211. Accordingly, we hold that the council may not unilaterally amend these proposals before submitting them to the mayor for final approval and implementation. Therefore, the council may not invoke the provisions of the UBAA to request a writ of mandamus regarding the implementation of the budget amendments at issue in this case.

## I. FACTUAL BACKGROUND

The dispute arose during the 1983-84 fiscal year for the City of Detroit. The Detroit City Council adopted the 1983-84 fiscal year budget on May 31, 1983. During the course of the fiscal year it became apparent that unforeseen reductions in expected revenue and additional required expenditures in excess of budgeted appropriations would render this budget inadequate to satisfy the balanced budget requirements of the UBAA.

The mayor directed the defendant, city budget director Walter Stecher, to develop a savings program with a target of $25 million. On November 2, 1983, Mayor Young submitted to the city council his recommendations for transfers of appropriations in order to balance the budget. The city council initiated a review of these proposals for amendment of the budget. The council held hearings at which reports were received from various departments of city government in order to conduct an independent inquiry into the merits of the mayor's recommended appropriations transfers.

Rather than accepting or rejecting the mayor's recommendations, the council altered some provisions and passed these modified appropriations transfers in the form of a resolution dated November 23, 1983.

When the mayor received the resolution from the city council, he declined either to veto it or sign it. Instead, upon the advice of counsel, he returned the unsigned resolution with an attached letter to the city council indicating that the council was without authority under the UBAA or the Detroit Charter to make amendments to a midyear budget amendment proposal submitted by the mayor.

The city council rejected this interpretation of

the city charter and the UBAA. Subsequently, by a unanimous vote, the council purported to "override" what they interpreted as a veto by Mayor Young of the budget amendment resolution. The council later inquired of defendant budget director Walter Stecher whether its appropriations transfers had been implemented. The defendant replied that they had not been implemented. He and others proceeded to carry out the budgetary scheme designed by Mayor Young.

The council petitioned the Wayne Circuit Court for a writ of mandamus against defendant Walter Stecher. The complaint requested the court to direct the defendant to publish and implement the 1983-84 budget as the council had amended it.[1] In August of 1984, Wayne Circuit Judge Harry J. Dingeman, Jr., granted the defendant's request for summary disposition. The plaintiff appealed.

The Court of Appeals held in favor of the plaintiff, 153 Mich App 601, 604; 396 NW2d 444 (1986). The Court remanded the matter to the circuit court for determination of whether the budget amendment question had become moot, i.e., whether the passage of fiscal year 1983-84 obviated the need for the requested writ of mandamus.[2] The defendant sought review in this Court, arguing that the city council lacked standing to request the writ of mandamus and that the city council lacked authority to initiate its own proposed budget amendments of the 1983-84 fiscal year budget.

---

[1] In a related matter that has been dismissed from the instant appeal, the council also requested of Mayor Young that its members be provided with quarterly budgetary reports. The mayor responded that the information was available to the city council on "FICS" (a computer access system) and that there were terminals for that system available in the city council offices.

[2] The Court of Appeals determined that the issue was not technically moot on the basis that the issue was capable of repetition and not subject to resolution in a timely fashion. 153 Mich App 601, 606; 396 NW2d 444 (1986). This Court's grant of leave to appeal did not include the mootness issue.

We granted leave to appeal, limited to the issues (1) whether the council had standing to bring an action against the defendant regarding the implementation of budget amendments, and (2) whether the council had the authority to amend a previously adopted budget in a manner not previously requested by the mayor.

## II. STANDING

The defendant argues that only the Attorney General may bring suit to enforce the provisions of the UBAA. He cites *Rayford v Detroit,* 132 Mich App 248; 347 NW2d 210 (1984), in which the Michigan Court of Appeals held that two City of Detroit police officers did not have standing to invoke the judicial process to enforce provisions of the UBAA.[3]

---

[3] This argument assumes that the plaintiff asserts a violation of a specific provision of the UBAA. In fact, the plaintiff does not assert that the administrative refusal to act violates a specific provision of the statute. Although the council's complaint relies in part on powers and duties created by the UBAA, it also implicates the basic right of the council to legislate by resolution pursuant to the city charter. Relevant portions of the complaint read as follows:

(29). That as of the date of the filing of this Complaint, the Budget Director, Walter I. Stecher, has not taken any action to implement the budget amendments passed by the Council on December 7, 1983, specifically, to take such action necessary to cause such amendments to be reflected on the books and records of the City of Detroit, including the 1983-84 budget.

(30). That the power, responsibility and duty to amend the city budget so as to prevent deficit spending, as required by the Uniform Budgeting and Accounting Act, M.C.L.A. 141.421, et seq., and further, to provide for the public health, safety and welfare, as required by the Charter of the City of Detroit, lies solely with the City Council, the duly elected legislative body for the City of Detroit.

(31). That the City Council and the council members acted in accordance with said duties in amending the 1983-84 budget in passing the aforedescribed Resolutions of November 23, 1983 and December 7, 1983.

(32). That the Defendant, Walter I. Stecher, Budget Director, ˙

For the reasons discussed in part III, we hold that the city council complaint does not assert rights enforceable pursuant to either the Detroit Charter or the UBAA. Therefore, we do not address the question whether the Attorney General is given exclusive enforcement power under the statute.

### III. SEPARATION OF POWERS

#### A. CHARTER PROVISIONS

Article 8, ch 2 of the city charter covers budgeting procedures for the City of Detroit. Article 8, ch 2 was included in the charter pursuant to provisions of the home rule cities act, MCL 117.3(h); MSA 5.2073(h).

Sections 8-203, 8-206, 8-207, and 8-208 cover the initial budget adoption process for each fiscal

is under a duty pursuant to the Uniform Budgeting and Accounting Act, M.C.L.A. 141.421, et seq., and the Charter of the City of Detroit, to administer the budget, and that under said duty, the Defendant Budget Director has the responsibility to implement any duly adopted budget amendments and to take such action necessary to cause such amendments to be reflected in the books and records of the City of Detroit, including the 1983-84 budget.

\* \* \*

(40). That the duty to implement budget amendments duly passed by the City Council pursuant to their statutory authority is the ministerial duty of the Budget Director of the City of Detroit, specifically Walter I. Stecher.

(41). That the Defendant, Walter I. Stecher, has failed to perform his ministerial duty by not implementing the 1983-84 budget amendments duly passed by the City Council in the Resolutions of November 23, 1983 and December 7, 1983.

(42). That the City Council cannot perform its duty to prevent deficit spending and to provide for the health, safety and welfare of the citizens of the City of Detroit through budgetary amendments unless amendments duly passed by said body are implemented by Defendant, Walter I. Stecher.

year.[4] Sections 8-210 and 8-211 cover amendments
to the budget and transfers of appropriations after
adoption of the initial budget, i.e., during a fiscal
year.[5] Thus, the city charter makes a clear distinc-
tion between the powers of the city council in the
initial budget adoption process and those of the

---

[4] Sec. 8-203. Annual budget.

   On or before April 1 each year, the mayor shall submit to the
city council a proposed annual budget for the next fiscal year.
Proposed capital appropriations shall be set forth in a separate
section of the annual budget.

Sec. 8-206. Public hearing.

   A public hearing in the manner provided by law or ordinance
shall be held on the proposed budget before adoption.

Sec. 8-207. Amendment before adoption.

   After the public hearing, the city council may adopt the
budget with or without amendment.

Sec. 8-208. Budget adoption.

   Consideration of the budget shall be completed by the city
council not later than May 15. If the mayor disapproves amend-
ments made by the city council, the mayor shall, within 7 days,
submit to the city council in writing the reasons for the
disapproval.

[5] Sec. 8-210. Amendments after adoption.

   1. If during the fiscal year the mayor advises the city council
that there are available for appropriation revenues in excess of
those estimated in the budget, the city council may make
supplemental appropriations for the year up to the amount of
the excess.

   2. To meet a public emergency affecting life, health, property
or the public peace, the city council may make emergency
appropriations. To the extent that there are no available unap-
propriated revenues to meet those appropriations, the city
council may authorize the issuance of emergency notes as
provided by law, this Charter or ordinance.

Sec. 8-211. Transfer of appropriations.

   At any time during the fiscal year upon written request by
the mayor, the city council may, by resolution, transfer all or
part of any unencumbered appropriation balance among the
programs, services or activities within an agency or from one
agency to another.

council subsequent to the initial adoption of the budget.

Section 8-210 allows amendments after adoption in two very unique circumstances. First, when there is a surplus of revenues, the council may make supplemental appropriations for a fiscal year up to the amount of the excess. Detroit Charter, § 8-210.1. Second, to meet a public emergency the council may either make appropriations from unappropriated revenues or, if there are no unappropriated revenues, the section allows the council to issue emergency notes to finance any deficit created, as permitted by any applicable statutes, charter provisions, or ordinances.

Section 8-211 allows the council to make transfers of appropriations during the fiscal year "upon written request by the mayor." This power is distinguished from that of the council during the initial budget adoption process when the council has the power to adopt the budget proposals submitted by the mayor "with or without amendment." Section 8-207. During the fiscal year the council is limited to responding to specific written requests from the mayor. There is no authorization in the charter for the council to initiate its own budget amendment proposals or to amend those submitted by the mayor.

### B. UNIFORM BUDGETING AND ACCOUNTING ACT

The UBAA establishes a uniform budgeting system for local units of government. It requires that each unit have a designated officer responsible for preparing the budget, that the budget be balanced when it is presented to the legislative body and when it is enacted, that periodic adjustments be made during the fiscal year as necessary to keep the budget balanced, that all expenditures be prop-

erly authorized by an appropriation, that no expenditures be made from an exhausted account, and that major transfers between appropriations accounts be made only on specific legislative authorization. House Legislative Analysis, SB 1298, December 21, 1978.

The provisions of § 17 of the UBAA govern procedures for amending the budget in the event of an impending deficit. Section 17 provides as follows:

> Except as otherwise provided in section 19, a deviation from the original general appropriations act shall not be made without amending the general appropriations act. The legislative body of the local unit shall amend the general appropriations act as soon as it becomes apparent that a deviation from the original general appropriations act is necessary and the amount of the deviation can be determined. An amendment shall indicate each intended alteration in the purpose of each appropriation item affected by the amendment. The legislative body may require that the chief administrative officer or fiscal officer provide it with periodic reports on the financial condition of the local unit. If, during a fiscal year, it appears to the chief administrative officer, or the fiscal officer in local units which have not elected or designated a chief administrative officer, or to the legislative body that the actual and probable revenues from taxes and other sources in a fund are less than the estimated revenues, including an available surplus upon which appropriations from the fund were based . . . , the chief administrative officer or fiscal officer shall present to the legislative body recommendations which, if adopted, would prevent expenditures from exceeding available revenues for that current fiscal year. The recommendations shall include proposals for reducing appropriations from the fund for budgetary centers in a manner that would cause the total of appropriations to not be greater than the total of revised estimated revenues of the fund, or proposals for measures

necessary to provide revenues sufficient to meet expenditures of the fund, or both. The recommendations shall recognize the requirements of state law and the provisions of collective bargaining agreements. [MCL 141.437; MSA 5.3228(37).]

The Court of Appeals held that the city council was the ultimate legislative decision-making body with respect to the budget. 153 Mich App 604. Accordingly, it held that the council had the authority to unilaterally initiate proposals for amendments to the fiscal year 1983-84 budget. *Id.*

The Court also held that the Detroit Charter provisions cited by the defendant to negate the council's authority to unilaterally amend the budget during the fiscal year were in conflict with the UBAA. The Court held that, to the extent the city charter imposes a greater burden on the city council than that required by the UBAA, the charter is void. It cited the provisions of the home rule statute, MCL 117.36; MSA 5.2116, which expressly state that no charter provision shall conflict with or contravene the provisions of any general law of the state. *Id.*

The defendant asserts that the Court of Appeals erred in limiting the role of the mayor to mere recommendation of amendable proposals for transfers of appropriations. He asserts that the council may only accept or reject the recommendations as submitted by the mayor; the council may not unilaterally amend the mayor's recommendations.

It is undisputed that the mayor is required to make recommendations to the city council in the event that it becomes apparent that a deficit will develop during a fiscal year. The relevant portion of § 17 provides:

    If, during a fiscal year, it appears to the chief

administrative officer, or the fiscal officer . . . or
to the legislative body that the actual and proba-
ble revenues . . . are less than the estimated
revenues . . . , the chief administrative officer or
fiscal officer *shall* present to the legislative body
recommendations which, *if adopted,* would prevent
expenditures from exceeding available revenues
for that current fiscal year. [MCL 141.437; MSA
5.3228(37). Emphasis added.]

The use of the mandatory "shall" in stating the
responsibilities of the mayor requires this interpre-
tation. See, e.g., *Brown v Dep't of Military Affairs,*
30 Mich App 463; 186 NW2d 747 (1971), rev'd on
other grounds 386 Mich 194; 191 NW2d 347 (1971),
cert den 405 US 990 (1972); *Sears v Dep't of
Treasury,* 57 Mich App 218; 226 NW2d 63 (1974).
The statute imposes the responsibility on the
mayor whether it is the mayor or the city council
or the chief financial officer of the city that ini-
tially discovers the impending deficit.

MCL 141.422b(3); MSA 5.3228(22b)(3) provides:

(3) "Chief administrative officer" means any of
the following:

* * *

(b) The city manager of a city or, if a city does
not employ a city manager, the mayor of the city.

The council acknowledges that the mayor has
the responsibility to submit such recommenda-
tions. The council asserts, however, that it was
free to change the proposal submitted by the
mayor before passing a budget amendment resolu-
tion. This is the heart of the dispute between the
parties.

We find that careful construction of the statute
yields the conclusion that the UBAA does not re-

quire that the city council have the authority to unilaterally amend the recommendations of the mayor before adopting them in the form of a resolution. The council may, however, reject the recommendations of the mayor. The mayor would then be required to develop another set of recommendations.

The council's power to reject the recommendations of the mayor is consistent with the phrase "if adopted" in the above-quoted section. This power does not, however, require the ability to unilaterally amend the recommendations. It must be noted that the Legislature has placed the most important requirements for the content of the budget amendment in the portion that describes the responsibilities of the mayor in formulating recommendations. Only the mayor is responsible for ensuring that the proposals submitted "would prevent expenditures from exceeding available revenues for that current fiscal year." Similarly, the mayor is solely responsible for recommending proposals for "reducing appropriations from the fund for budgetary centers in a manner that would cause the total of appropriations to not be greater than the total of revised estimated revenues of the fund, or proposals for measures necessary to provide revenues sufficient to meet expenditures of the fund, or both." Further, it is the mayor's responsibility to ensure that the proposals recognize the requirements of state law and the provisions of collective bargaining agreements. MCL 141.437; MSA 5.3228(37).

As indicated, these specifications for the content of budget amendments appear in the part of the section that delineates the responsibilities of the mayor. They do not appear in the language which describes the responsibilities of the city council. The only specification appearing in the latter part requires that the appropriations transfer resolu-

tion contain the purpose of each appropriation item. *Id.*

We find that the specificity of detail included in the responsibilities of the mayor coupled with the lack of specificity in describing responsibilities of the city council militates toward the conclusion that the mayor's recommendations are to generate the subsequent budget amendment resolution. This must be understood in light of the fact that the council may reject the recommendation; however, upon that rejection, the mayor is required to come up with another set of proposals that also satisfies the specifications listed above.

Therefore, we hold that the council may either accept or reject the recommendations submitted by the mayor. We find that this construction is also consistent with the separation of powers and duties in the city charter.

### C. CONFLICT OF PROVISIONS

The Court of Appeals found that the provisions of § 8-211 were in conflict with those of the UBAA; accordingly, it found that Detroit Charter, § 8-211 was void to the extent that it imposed greater requirements than UBAA, § 17 in an impending budget deficit situation. 153 Mich App 604. We find no conflict because our construction of § 17 of the UBAA is perfectly consistent with our construction of § 8-211 of the Detroit Charter. The purpose of § 17 of the UBAA is to mandate a balanced budget. Its terms do not expressly specify whether the council may amend proposals submitted by the mayor, nor do they specify whether the mayor has veto power over any amendments adopted by the city council. On the other hand, § 8-211 of the city charter is primarily a procedural provision that specifies the process by which the city budget may

be amended during the course of a fiscal year. Thus, although our construction of § 17 of the UBAA is consistent with our interpretation of the city charter, we find that to the extent § 17 is nonspecific the provisions of the city charter should dictate the procedures by which the budget should be amended in the event of an impending budget deficit.

The charter provision in question neither permits what the UBAA prohibits nor does it prohibit what the UBAA permits. This precludes a finding of direct conflict between the statute and the charter provision. See *Builders Ass'n v Detroit,* 295 Mich 272, 277; 294 NW 677 (1940). See also *Walsh v River Rouge,* 385 Mich 623, 637; 189 NW2d 318 (1971); *Miller v Fabius Twp Bd,* 366 Mich 250, 258; 114 NW2d 205 (1962). Finding no conflict between the provisions of the UBAA and those of the Detroit Charter, we hold that the two provisions may be read together in harmony in the event that it becomes apparent during a fiscal year that the budget for the City of Detroit will not balance.[6] It becomes the responsibility of the mayor to submit proposals that will prevent deficit spending. The council may either accept or reject the proposals, but the council may not initiate budget amendment proposals during a fiscal year, nor may it amend those submitted by the mayor. Therefore, we hold that the separation of powers and duties set forth in the city charter providing that the

[6] In addition, in several places in the UBAA there are indications that it is not intended to proscribe or interfere with the local unit's scheme for dealing with its fiscal affairs. See, e.g., § 14(1) "[u]nless otherwise provided by law, charter, resolution, or ordinance, the chief administrative officer shall have final responsibility for budget preparation . . . ."

Section 14(2) "[u]nless another person is designated by charter . . . ."

Section 16(1) "[u]nless another method for adopting a budget is provided by a charter provision . . . ."

council may accept or reject the recommendations submitted by the mayor is not inconsistent with the UBAA.

### CONCLUSION

We hold that when, during a fiscal year, it becomes apparent that the budget of the City of Detroit will not balance, the mayor has the responsibility and the power to make recommendations to the city council for appropriations transfers in order to achieve a balanced budget to comply with the provisions of the UBAA. The city council may accept or reject recommendations submitted by the mayor to effect a balanced budget, but the council may not unilaterally amend the mayor's proposals. We further hold that the provisions of the Detroit Charter do not conflict with those of the Uniform Budgeting and Accounting Act. Therefore they may be read together to provide for an orderly process of budget amendment in the face of an impending budget deficit. Accordingly, the city council may not invoke the provisions of the UBAA to acquire authority prohibited to it by the Detroit Charter. The decision of the Court of Appeals is reversed.

RILEY, C.J., and LEVIN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with ARCHER, J.

GRIFFIN, J. I respectfully dissent from the majority's conclusion that the city council may only accept or reject recommendations submitted by the mayor for dealing with an impending deficit in the general budget. I would hold that the council has the authority and responsibility to amend such recommendations as it deems necessary, subject to the authority of the mayor to veto any such amendment.

Section 17 of the Uniform Budgeting and Accounting Act (UBAA) specifically places an affirmative duty upon the city council as the legislative body to correct impending deficit situations:

> The legislative body of the local unit *shall amend* the general appropriations act as soon as it becomes apparent that a deviation from the original general appropriations act is necessary and the amount of the deviation can be determined. [MCL 141.437; MSA 5.3228(37). Emphasis supplied.]

I agree with the majority that the specificity in § 17 of the UBAA concerning the responsibilities of the mayor "militates toward the conclusion that the mayor's recommendations are to generate the subsequent budget amendment resolution." *Ante,* p 88. However, I do not read that section as limiting the council to a mere yea or nay vote on the mayor's recommendations. If the council's role were so constrained, the Legislature would not have placed the final responsibility upon the council to "amend the general appropriations act" when deviation from the adopted budget becomes necessary to avoid a deficit. Otherwise, if the council found the mayor's proposals inadequate, it would be prevented from fulfilling responsibilities placed upon it by the UBAA. Here, the mayor's recommendations did inform and generate amendments by the council.

I am not persuaded by the majority's arguments concerning harmonization of the UBAA with the Detroit City Charter. I do not find that either § 17 of the UBAA or any provision of the city charter directly addresses the question whether the council can make unilateral amendments. Also, contrary to the majority's characterization, the Court of Appeals did not actually find that the provisions of § 8-211 of the charter were in conflict with those

of the UBAA. See 153 Mich App 601, 604; 396 NW2d 444 (1986). Rather, that Court held that the charter would be void to the extent it imposed a greater burden on the council than that required by statute. This holding is supported by the home rule cities act, MCL 117.36; MSA 5.2116, and a decision of this Court, *Marks v Battle Creek,* 358 Mich 114, 117; 99 NW2d 587 (1959).

Although the mayor did make his proposals to transfer appropriations pursuant to § 8-211 of the charter, the council's resolution included a plan to *decrease appropriations* for the City Personnel Department and Law Department. These changes constituted different action than the "transfer [of] all or part of any unencumbered appropriation[s]" envisioned by § 8-211. Also, § 8-210, which describes procedures for amendments after the adoption of the budget in two types of instances, does not state that its provisions are exclusive.

In the deficit situation faced by the council, it is clear that the council did not completely reopen the budgetary process, but rather allowed the mayor to fulfill his obligations under the UBAA by submitting recommendations to prevent expenditures from exceeding revenues. The council then conducted open meetings, reviewed documentation, and questioned department heads before passing its resolution by a unanimous vote. These actions were all consistent with the normal budgetary processes outlined in § 8-205. The city council, as the city's legislative body, had "the powers and duties provided by law . . . ." Detroit Charter, § 4-101. The charter also provides that the council "shall determine its own rules and order of business . . . ." § 4-105.

The council in this case acted properly to fulfill its duties under the UBAA and did not violate any provision of the city charter. I would affirm the Court of Appeals decision.