187 Mich. App. 452 (1991)
468 N.W.2d 260
In re FORD
(WAYNE COUNTY PROSECUTOR
v.
36TH DISTRICT JUDGE)
Docket No. 115674.
Michigan Court of Appeals.
Decided February 19, 1991, at 9:35 A.M.
John D. O'Hair, Prosecuting Attorney, Andrea Solak, Chief, Special Operations, and Charles E. Grant, Assistant Prosecuting Attorney, for the plaintiff.
*453 William R. McNamee and Barbara Bassett McIver, for the defendant.
Before: DANHOF, C.J., and CAVANAGH and BEASLEY,[*] JJ.
DANHOF, C.J.
In this case, we are asked to construe the bail provision of the Uniform Criminal Extradition Act (UCEA), MCL 780.15; MSA 28.1285(15). We hold, consistent with the majority of the jurisdictions which have addressed the issue, that once a governor has issued an extradition warrant and a fugitive is being held solely for purposes of extradition to another state under the UCEA, the fugitive has no right to bail, and the courts of this state have no power to grant bail.
On December 19, 1988, Detroit police officers, along with FBI agents, arrested Brenda Joyce Ford at a home in Detroit. Ford was wanted for a 1982 armed robbery in Birmingham, Alabama. She was taken into custody, and the defendant 36th District Court judge set bail at $20,000 or ten percent cash. On February 1, 1989, our Governor, after receiving a facially proper extradition demand from Alabama officials, issued an extradition warrant authorizing the delivery of Ford to agents of the State of Alabama. See MCL 780.4-780.7; MSA 28.1285(4)-28.1285(7).
On February 9, 1989, Ford moved for a continuance of her bail and sought an adjournment to permit her to request a hearing before the Governor's office to contest the issuance of the Governor's warrant. Defendant granted Ford's request for time to seek a Governor's hearing, but initially denied Ford's request for bail. However, another hearing was held later the same day, and defendant *454 decided that the bail provision of the UCEA did not prohibit the granting of bail after the issuance of a Governor's warrant. The court therefore granted Ford's request to continue the $20,000 bail.
After the ruling, plaintiff brought a motion in the Detroit Recorder's Court, seeking review of defendant's bail decision under MCR 6.110(G)(1) (now MCR 6.106[G][1]) or, in the alternative, a writ of superintending control under MCR 3.302. Plaintiff argued that once the Governor has issued an extradition warrant, the detained person is no longer entitled to bail under the extradition act. Plaintiff sought cancellation of Ford's bail and an order that she be remanded to jail to await extradition. On February 24, 1989, the Recorder's Court denied plaintiff's motion and alternative request for a writ of superintending control.
Plaintiff then brought a motion before this Court, seeking immediate consideration and review of the Recorder's Court bail decision under MCR 6.110(G)(2) (now MCR 6.106[G][2]) or, again, a writ of superintending control. We granted plaintiff's motion for immediate consideration and ordered the parties to proceed to a full hearing on the merits in the same manner as in an appeal of right. MCR 7.206(D)(3).
On April 7, 1989, Brenda Joyce Ford was extradited to Alabama. This issue is, therefore, technically moot. However, we will decide the issue because it is of public significance and is likely to recur in the future, yet evade review. Contesti v Attorney General, 164 Mich App 271, 278; 416 NW2d 410 (1987); People v Wershe, 166 Mich App 602, 605, n 1; 421 NW2d 255 (1988). We review the lower court's bail decision under the abuse of discretion standard. MCR 6.106(G)(4).
*455 The bail provision of the UCEA, MCL 780.15; MSA 28.1285(15), states:
Unless the offense with which the prisoner is charged is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed, a judge or magistrate in this state may admit the person arrested to bail by bond, with sufficient sureties, and in such sum as he deems proper, conditioned for his appearance before him at a time specified in such bond, and for his surrender, to be arrested upon the warrant of the governor of this state.
The narrow question presented in this case is whether bail is available under this provision once the Governor has issued an extradition warrant. The statute itself does not expressly answer the question. The statute clearly permits the granting of bail in an appropriate situation before the Governor issues a warrant. And a reasonable interpretation of the phrase "conditioned for his appearance before him at a time specified in such bond, and for his surrender, to be arrested upon the warrant of the governor of this state" is that the initial grant of bail is to be revoked once the Governor's warrant is issued. But the statute does not address whether bail may be reinstated, or granted anew, after the fugitive has been arrested on the Governor's warrant.
This question has not been addressed in any reported Michigan case, so we cannot look to the case law of this state. The only Michigan case that touched on the issue of bail in an extradition proceeding, In re Palmer, 138 Mich 36; 100 NW 996 (1904), predated the Legislature's enactment of the uniform extradition act. In Palmer, the Court was called upon to decide the extent to which the courts may review the Governor's decision to issue *456 an extradition warrant. The Court concluded that the courts have very restricted review power where a Governor's warrant is facially valid and the extradition demand is regular in all respects. To emphasize the limited role of the courts in this situation, the Palmer Court noted, inter alia, that "State courts are not permitted to hold to bail." Id., p 37.
This statement from Palmer supports the view that bail is not available once a Governor's warrant has been issued. However, as stated, Palmer was not construing the UCEA. Further, bail was not at issue there, so the Court's statement concerning bail was dicta. Thus, while Palmer supports our conclusion, it is not dispositive of this case.
Instead, we look to and follow the reasoning of the majority of our sister states that have addressed this precise issue. The majority and minority views on this issue were summarized in a recent Illinois case, Beauchamp v Elrod, 137 Ill App 3d 208; 484 NE2d 817 (1985). Illinois has adopted the UCEA, including the bail provision at issue here. Neither Michigan nor Illinois has altered the bail provision. The defendant in Beauchamp had argued, as does the defendant here, that he was entitled to bail even though the governor of that state had issued an extradition warrant. The court said:
A thorough review of case law in other States reveals that there is a minority and majority rule on this particular issue. The minority rule is that the right to bail continues even after issuance of the Governor's warrant. (See, e.g., Nebraska ex rel Partin v Jensen (1979), 203 Neb 441, 279 NW2d 120; Carino v Watson (1976), 171 Conn 366, 370 A2d 950; Ruther v Sweeney (1956), 75 Ohio Abs 385, 137 NE2d 292; Application of Haney (1955), 77 Idaho 166, 289 P2d 945.) These courts reached their decision by reasoning that because courts *457 have the inherent power to set bail the right continues even after issuance of the Governor's warrant. Plaintiff urges this court to adopt the minority rule and remand this case to the circuit court for the setting of reasonable bail.
The majority of the courts that have addressed this issue have determined that, absent statutory authorization, a defendant detained by a governor's warrant has no right to bail. (See, e.g., Deas v Weinshienk (1975), 188 Colo 17, 533 P2d 496; State ex rel Howard v St Joseph Superior Court (1974), 262 Ind 367, 316 NE2d 356; State v Second Judicial District Court (1970), 86 Nev 531, 471 P2d 224; In re Application of Amundson (1945), 74 ND 83, 19 NW2d 918; State v Pritchett (1975), 12 Wash App. 673, 530 P2d 1348; In re Lucas (1975), 136 NJ Super 24, 343 A2d 845; Balasco v State (1974), 52 Ala App 99, 289 So 2d 666; Grano v State (Del Super Ct 1969), 257 A2d 768; Buchanan v State ex rel Weiss (Fla App 1964), 166 So 2d 596.) The rationale of these decisions is that because the fugitive is being held for another State he should be readily available to be turned over to those who arrive to return him. A presumption exists that the demanding State will accord the fugitive all his legal rights, including that of bail. Meechaicum v Fountain (10th Cir 1983), 696 F2d 790, 792.
The reasoning of the majority rule, we conclude, is best suited for that of extradition proceedings. As the supreme court has stated, the asylum state is an inappropriate forum in which to raise constitutional issues. (Sweeney v Woodal (1953), 344 US 86, 89-90, 97 L Ed 114, 118, 73 S Ct 139, 140-141.) Furthermore, it is more appropriate that the accused's right to bail be tested by the laws of the demanding State where he is charged with a crime, and not by the state which holds him solely for the purpose of rendition. (State v Second Judicial District Court (1970), 86 Nev 531, 538, 471 P2d 224, 227.) [137 Ill App 3d 214-215.]
For additional cases following the majority rule, *458 see Emig v Hayward, 703 P2d 1043, 1049-1050 (Utah, 1985); State ex rel Schiff v Brennan, 99 NM 642; 662 P2d 642 (1983); Bayless v Wandel, 119 Misc 2d 82; 462 NYS2d 396 (1983); State v Truman, 115 Ariz 145; 564 P2d 96 (1977). We note also that at least one state, Nevada, has altered the language of the UCEA'S bail provision to expressly provide that a fugitive may not be granted bail after the issuance of the governor's extradition warrant. Nev Rev Stat 179.209.
We find the rationale of the majority of states, as set forth in Beauchamp, persuasive. The UCEA is derived from the Extradition Clause of the United States Constitution, art IV, § 2, cl 2. In Michigan v Doran, 439 US 282, 288; 99 S Ct 530; 58 L Ed 2d 521 (1978), the Court said that the Extradition Clause requires that extradition be a "summary and mandatory executive proceeding," and that state courts are bound by the Extradition Clause and, where adopted, the UCEA. This principle was reaffirmed in Puerto Rico v Branstad, 483 US 219, 227; 107 S Ct 2802; 97 L Ed 2d 187 (1987), where the Court also stated that the Extradition Clause "afford[s] no discretion to the executive officers or courts of the asylum state." Under Doran, once the governor of the asylum state has granted extradition, a court can do no more than (a) examine the extradition documents to ensure that they are facially valid, (b) determine whether the petitioner had been charged with a crime in the demanding state, (c) ensure that the person being held is the person named in the extradition request, and (d) determine whether the person is a fugitive.
We read Doran to require the asylum state, once the governor has granted extradition by issuing a proper extradition warrant, to simply hold the person for extradition, subject to the habeas corpus *459 challenge outlined in that case. See Cadle v Cauthron, 266 Ark 419; 584 SW2d 6 (1979). Once extradited, the demanding state can then determine whether the fugitive is entitled to bail, and in what amount. It would be inconsistent with the function ascribed to the asylum state by the Extradition Clause and the UCEA to permit courts of the asylum state to grant bail to a fugitive after a proper demand has been tendered and a governor's extradition warrant is issued in this state. By granting bail in this case, the lower courts abused their discretion.
Defendant argues that this result is incorrect because under Const 1963, art 1, §§ 15 and 16 and the statutes implementing those provisions, MCL 765.1 et seq.; MSA 28.888 et seq., all persons are entitled to bail except in the enumerated circumstances. However, those provisions refer to persons charged with offenses against the laws of this state and are not applicable to persons arrested in this state for interstate extradition. Where a person has committed no crime in this state, but was merely arrested here and is awaiting extradition to another state, the mandates of the Extradition Clause control. We believe that our decision more closely comports with the Extradition Clause and the UCEA. Therefore, we reverse the decisions of the lower courts, and we hold that once the Governor has issued an extradition warrant under the UCEA, any bail previously granted to the fugitive must be revoked and bail may not be reinstated or granted anew. The fugitive being held under the Governor's warrant must be jailed to await extradition, subject to the habeas corpus challenge outlined in Michigan v Doran, supra.
Reversed. No costs, a public question being involved.
*460 CAVANAGH, J., concurred.
BEASLEY, J. (concurring in part and dissenting in part).
I respectfully concur in part and dissent in part.
In a carefully reasoned opinion, the majority holds that once the Governor issues an extradition warrant, bail is no longer available under § 15 of the Uniform Criminal Extradition Act, MCL 780.15; MSA 28.1285(15), which provides:
Unless the offense with which the prisoner is charged is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed, a judge or magistrate in this state may admit the person arrested to bail by bond, with sufficient sureties, and in such sum as he deems proper, conditioned for his appearance before him at a time specified in such bond, and for his surrender, to be arrested upon the warrant to the governor of this state.
Plaintiff appeals from the decision of Recorder's Court Judge Sapala affirming the grant of bond by 36th District Court Judge Curtis.
In this Court, noting that other states entertain conflicting views on this issue, the majority indicates a preference for the Illinois rule, as expressed in 1985 in Beauchamp v Elrod, 137 Ill App 3d 208; 484 NE2d 817 (1985).
I prefer the so-called minority rule, which would give the trial judge the power to set bail and to release the extraditable defendant on bond when the state seeking to extradite is unreasonably slow in picking up and returning the prisoner. Unfortunately, the fact is that, from time to time, the criminal justice bureaucracy lets a prisoner slip through the cracks, and the prisoner is left languishing *461 in a Michigan jail. I recall one case where Florida sought to extradite a defendant charged in Florida with possession of a very small amount of marijuana and then, after meeting the extradition requirements, failed for months to pick him up. In such situations, I believe the Michigan judge should have the power after hearing to fix a reasonable bond, rather than requiring a prisoner to wait in jail until the foreign state gets around to picking up the prisoner.
I see no harm in placing confidence in and reliance upon the discretion of Michigan trial judges to decide when a situation exists that justifies setting a bond for such prisoners.
Thus, while joining the majority in holding that this case is moot, contrary to the majority I would vote to affirm the power of the trial courts to release such prisoners on bond when the circumstances appear to justify it.
NOTES
[*] Former Court of Appeals judge, sitting on the Court of Appeals by assignment.