DETROIT FIRE FIGHTERS ASSOCIATION v CITY OF DETROIT

Docket No. 128335. Submitted July 15, 1992, at Detroit. Decided April 5, 1993, at 9:50 A.M. Leave to appeal sought.

The Detroit Fire Fighters Association and several of its officers brought an action in the Wayne Circuit Court against the City of Detroit, its mayor, and others, seeking a writ of mandamus compelling the defendants to spend monies appropriated by the Detroit City Council for the hiring of additional fire fighters. The court, Sharon Tevis Finch, J., granted summary disposition for the defendants, ruling that, although the plaintiffs had standing to bring the action, the mayor was under no obligation to spend the appropriated funds. The plaintiffs appealed. The defendants cross appealed, contending that the trial court erred in ruling that the plaintiffs had standing.

The Court of Appeals *held*:

1. The plaintiffs did not have standing to bring this action. Standing requires a demonstration that a plaintiff's substantial interest will be affected detrimentally in a manner different from the citizenry at large. In this case, the plaintiffs claimed that the fire fighters they represented risked physical and emotional injury because of the failure to hire additional fire fighters. That risk of injury, however, is no different from the risk posed to the general public. Additionally, the plaintiffs have no standing under the city charter and code to challenge the mayor's decision not to spend the appropriated funds.

2. Although the issue whether the mayor had a clear and legal duty to spend the appropriated funds should not have been given plenary consideration because the plaintiffs lacked standing, the trial court correctly concluded that the mayor was not required by the city charter or the Uniform Budgeting and Accounting Act, MCL 141.421 *et seq.*; MSA 5.3228(21) *et seq.*, to spend the appropriated funds.

Affirmed.

MARILYN KELLY, J., dissenting, stated that the plaintiffs have standing because the lack of additional fire fighters detrimentally affects the plaintiffs' members in a manner different from the citizenry at large, and that neither the city charter nor the Uniform Budgeting and Accounting Act grants the mayor the

authority to refuse to spend funds appropriated by the city council.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Theodore Sachs, Mark Brewer,* and *Reginald M. Turner, Jr.*), for the plaintiffs.

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, and *Terri L. Hayles,* Assistant Corporation Counsel, for the defendants.

Before: TAYLOR, P.J., and BRENNAN and MARILYN KELLY, JJ.

TAYLOR, P.J. Plaintiffs union and union officers appeal as of right the Wayne Circuit Court's grant of summary disposition to defendants. Plaintiffs challenge the trial court's ruling that the executive branch of the government of the City of Detroit may properly refuse to expend monies appropriated by the city council for a particular use. Defendants cross appeal, contending that the trial court erred in ruling that plaintiffs had standing to bring suit in the first instance. We affirm.

The operative facts are not in dispute. After defendant mayor submitted his written proposal for the city's budget for fiscal year 1989-90, the city council amended the budget, including an addition of $750,000 for a new fire department squad. Upon returning the budget to the mayor for his reconsideration, the mayor vetoed $500,000 of the $750,000 appropriated for a new fire squad. A majority vote of the council (8-1) overrode the mayoral veto and reinstated the entire $750,000

appropriation. However, the mayor never used the appropriation.[1]

Plaintiffs, who represent the city's fire fighters, sought a writ of mandamus compelling defendants to spend the money. Both sides moved for summary disposition. The trial court ruled that plaintiffs did in fact have standing. However, the trial court granted defendants summary disposition on the ground that the mayor need not confer with the city council in deciding not to expend appropriated monies, and therefore declined to issue a writ of mandamus.

The first issue, of course, is whether plaintiffs had standing to bring suit in the first instance. After reviewing this question de novo, *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991), we hold that plaintiffs did not have standing.

Standing is a legal term denoting the existence of a party's interest in the outcome of litigation that will ensure sincere and vigorous advocacy. However, evidence that a party will engage in full and vigorous advocacy, standing alone, is insufficient to establish standing. *House Speaker v State Administrative Bd,* 441 Mich 547, 554; 495 NW2d 539 (1993). No one may rightfully invoke the jurisdiction of the circuit court "unless one has in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." *Bowie v Arder,* 441 Mich 23, 42-43; 490 NW2d 568 (1992). To have standing, a plaintiff must demonstrate a legally protected interest that is in jeopardy of being adversely affected, and must allege a sufficient personal stake

---

[1] We will address the issues presented, although they are now moot, because they are of public significance and are likely to reoccur. *In re Ford,* 187 Mich App 452, 454; 468 NW2d 260 (1991).

in the outcome of the dispute to ensure that the controversy sought to be adjudicated will be presented in an adversarial setting that is capable of judicial resolution. *Trout Unlimited v City of White Cloud,* 195 Mich App 343, 348; 489 NW2d 188 (1992). Generally, a plaintiff shows such a personal stake in a lawsuit by demonstrating that he has been injured or represents someone who has been injured, *id.; Kaminskas v Detroit,* 68 Mich App 499; 243 NW2d 25 (1976), and also that his substantial interest will be detrimentally affected in a manner different from the citizenry at large, *House Speaker, supra,* p 554.

In the present case, defendants do not argue that they have standing because of their status as city employees or taxpayers. Rather, they argue that they have standing because they (or their members) risk physical and emotional injury because there is an insufficient number of fire fighters, a situation that expenditure of the appropriation would have alleviated. We conclude that plaintiffs have suffered damages no different than the public at large. We are aware that plaintiffs' expert testified that plaintiffs' fire fighters are more likely to be injured unless more fire fighters are hired. However, this rather obvious statement of probabilities does not constitute a real or concrete injury separating them from the general public.

This increased likelihood of physical injury is not unlike the general public's increased likelihood of physical injury due to the lack of fire fighters. That is, it is more likely that a fire fighter who fights two hundred fires annually will be hurt than the same fire fighter who fights one hundred fires annually if only because that fire fighter is more often put at risk. But people occupying buildings that catch on fire are more likely to be injured when there are fewer fire fighters available to put

out the fires. Both segments of society are at greater risk when there is a dearth of fire fighters.

Private individuals and organizations do not have standing to redress grievances on behalf of the public. Nevertheless, in seeking to enforce the city charter and code, plaintiffs seek to enforce that which is intended to promote responsible budgeting and to avoid deficit spending. In this regard, the intended effects of the city charter and code are identical to those of the Uniform Budgeting and Accounting Act (UBAA), MCL 141.421 *et seq.*; MSA 5.3228(21) *et seq.*, under which this Court has previously held that those challenging the mayor's actions had no standing to sue. *Rayford v Detroit,* 132 Mich App 248, 257; 347 NW2d 210 (1984). Accordingly, we hold that plaintiffs have no standing to sue under the city charter and code, which may be read in harmony with the UBAA. *Detroit City Council v Stecher,* 430 Mich 74, 89-90; 421 NW2d 544 (1988).

We agree, however, with the trial court's conclusion that the mayor was not required to spend the money appropriated for hiring additional fire fighters.[2] An appropriation is not a mandate to spend. Under the UBAA, "appropriation" is defined as an *authorization,* not a requirement, to incur obligations and to expend public funds. MCL 441.422a(3); MSA 5.3228(22a)(3).[3] Under both the UBAA and the city charter the mayor has a duty to operate the city within a balanced budget, and must control

[2] It is noteworthy that the mayor did not spend this money on anything else or transfer it to any other program; he simply did not spend it.

[3] This Court has held that the Governor has no power to decline to spend despite the language of Const 1963, art 5, § 20, which says that no appropriation is a mandate to spend. *International Union v Michigan,* 194 Mich App 489, 500-501; 491 NW2d 855 (1992). However, that case is confined to its facts, which included a statute specifically directing the expenditure of earmarked money for the purpose of providing specific services. *Id.,* p 501. That mandate to spend is limited to those narrowly drawn facts.

spending so as to avoid a budget deficit.[4] Were plaintiffs permitted to successfully challenge the mayor's discretionary decision to simply *not* spend, the mayor would be unable to prevent the deficit spending that is proscribed by law, a law that he is charged with upholding.

We note specifically that the facts of this case are distinguishable from those of *Stecher, supra,* because the appropriation in question was neither altered nor was it the subject of a transfer. Therefore, the formal procedures set forth in the UBAA[5] and the city charter do not come into play. *Stecher, supra,* p 77.

Although the trial court's grant of summary disposition to defendants was legally correct as far as it went, the issue whether the mayor had a clear legal duty to spend should not have been given plenary consideration because plaintiffs lacked standing to sue. Thus, although in granting defendants summary disposition the trial court properly declined to issue the writ of mandamus sought by plaintiffs, the proper result was reached for, at least in part, the wrong reason. However, because the correct result was reached, we will not disturb the result on appeal. *Paul v Bogle,* 193 Mich App 479, 492; 484 NW2d 728 (1992).

Affirmed.

BRENNAN, J., concurred.

MARILYN KELLY, J. *(dissenting).* The majority concludes that plaintiffs lack standing to bring this

[4] See § 15(2) of the UBAA, MCL 141.435(2); MSA 5.3228(35)(2) and § 8-204 of the city charter. Note also that under § 14(1) of the UBAA, MCL 141.434(1); MSA 5.3228(34)(1), the mayor is required to control expenditures under the budget and the general appropriations act. Under § 5-102 of the city charter, the mayor has the exclusive executive and administrative authority for the implementation of programs, services, and activities of city government.

[5] See § 17 of the UBAA, MCL 141.437; MSA 5.3228(37).

action and that the mayor was not required to spend the money appropriated for hiring additional fire fighters. I disagree.

I

The majority finds that plaintiffs lack standing, because their damages are no different from those of the citizenry at large. See *House Speaker v State Administrative Bd,* 441 Mich 547, 554; 495 NW2d 539 (1993), citing *Alexander v Norton Shores,* 106 Mich App 287, 288; 307 NW2d 476 (1981). They conclude that the fire fighters' increased chance of physical injury is not unlike the general public's increased chance of physical injury due to a lack of fire fighters.

Admittedly, both fire fighters and the general public are at greater risk of physical injury when there is an insufficient number of fire fighters. However, fire fighters are detrimentally affected in a manner different from the citizenry at large. See *House Speaker, supra.* The increased risk of injury to fire fighters is different in degree and in kind from that of the general public. A fire fighter is much more likely to sustain injury due to the insufficiency of fire fighters than is a member of the general public. The more fires one encounters, the greater the likelihood of injury. Also, a fire fighter may be more susceptible to injury due to errors caused by sleep deprivation.

Aside from the increased risk of physical injury, fire fighters suffer from an increased risk of serious emotional distress. An insufficiency of fire fighters harms the morale and efficiency of all existing fire fighters. Unlike the average citizen, fire fighters live every workday with the real possibility that, due to a lack of personnel, they may be seriously harmed.

The majority finds *Rayford* controlling.[1] In *Rayford,* two police officers and their union brought suit claiming the officers had been illegally laid off to avoid a budget deficit. We concluded that the plaintiffs did not have standing under the Uniform Budgeting and Accounting Act (UBAA). The statute expressly provided that only the attorney general or prosecuting attorney could pursue a civil action for remedy of a breach of the act. MCL 141.440; MSA 5.3228(40). We stated that the purpose of the UBAA is to promote uniform budgets and to avoid deficit spending, not to afford security of employment. *Id.,* 257.

I find *Rayford* distinguishable from this case. Here, plaintiffs filed suit for violations of the Detroit City Charter, not the UBAA. Unlike the plaintiffs in *Rayford,* the plaintiffs in this case do not base standing on their status as city employees or taxpayers. Instead, they argue that they risk injury due to a lack of fire fighters. In addition, they challenge the mayor's unilateral actions as being outside his powers under the Detroit City Charter. They assert also that the mayor's actions violated the separation of powers clause of the Michigan constitution. Const 1963, art 3, § 2. See *House Speaker v Governor,* 195 Mich App 376; 491 NW2d 832 (1992), lv gtd 441 Mich 909 (1993). *Rayford* does not control the standing issue in this case. Cf. *Muskegon Bldg & Construction Trades v Muskegon Area Intermediate School Dist,* 130 Mich App 420, 423-424; 343 NW2d 579 (1983).

*Muskegon* is the controlling case law. In *Muskegon,* the plaintiff was a labor organization of craft and trade unions representing individual construction workers. Plaintiff filed suit alleging that the defendant failed to follow the prevailing wage act.

---

[1] *Rayford v Detroit,* 132 Mich App 248, 257; 347 NW2d 210 (1984).

MCL 408.551 *et seq.*; MSA 17.256(1) *et seq.* The defendant solicited bid specifications for a particular project and failed to include provisions for the payment of wages and fringe benefits at the prevailing rates. The defendant argued that the plaintiff lacked standing, because individual members of the trade associations had no right to employment under the act.

In *Muskegon*, the plaintiff alleged irreparable harm to its members if the defendant could receive bids or award contracts to bidders not required to pay prevailing wages and benefits. A number of plaintiff's members were unemployed; they could not get work on the project in question if the prevailing wage act were not complied with. Even if prevailing wages and benefits had been offered, none of the individual members of the organization represented by the plaintiff would have had a right to a job. *Id.*, 426. Plaintiff maintained its members would be hired for the project if the act were complied with. The Court recognized that, although defendant could contest plaintiff's allegations, the contest was relevant to whether plaintiff was entitled to relief, not to its standing to bring suit. *Id.*

This Court in *Muskegon* found standing based on the plaintiff's status as an association of trade organizations established to enhance the political and economic power of its members. The association was formed to protect the rights and interests of its members. We recognized that the plaintiff had a direct interest in compliance with the prevailing wage act; the existence of the association was dependent upon the existence and health of its members.

Similar to the plaintiff labor organization in *Muskegon*, plaintiffs here are the union and union officers authorized to represent fire fighters em-

ployed by the City of Detroit. They have a direct
interest in the expenditure of the budget appropri-
ation; the union was formed to protect the inter-
ests of its members. John Devine, plaintiffs' fire
service expert, stated by deposition attached to
plaintiffs' motion that an increase in fire fighters
would reduce the risk of injuries to all other fire
fighters. The deposition testimony takes plaintiffs'
allegations of future injury out of the realm of
speculation. Cf. *Saginaw Fire Fighters Ass'n v
Civil Service Comm,* 71 Mich App 240; 247 NW2d
365 (1976).

The personal interest and stake of the union
members are sufficiently adverse and real. See
*Trout Unlimited v City of White Cloud,* 195 Mich
App 343; 489 NW2d 188 (1992); *Bowie v Arder,* 441
Mich 23; 490 NW2d 568 (1992). The members are
harmed in a manner different from the citizenry
at large. *House Speaker, supra.* Therefore, I would
find that plaintiffs have standing to advocate asso-
ciation members' interests in this action. See
*Trout Unlimited, supra.* I would affirm the trial
court's ruling that plaintiffs have standing.

II

The majority agrees with the trial court that the
mayor was not required to spend the money appro-
priated for hiring additional fire fighters. I dis-
agree.

Plaintiffs argue that the trial court erred in
determining that the executive branch of the De-
troit city government may refuse to expend monies
appropriated for a particular use. They argue that
the city charter is a grant of power and, unless
authorization to perform a particular act was writ-
ten into the charter, it does not exist. The city
charter provides only two methods of altering the

budget once adopted, they argue, and neither was invoked here. Detroit Charter, § 8-210.

Neither the Detroit City Charter nor the UBAA gives the mayor the authority to refuse to expend appropriated funds. Generally, a mayor has only that authority which is expressly or impliedly conferred by the charter or the applicable law, or by the governing legislative body acting within the law. 3 McQuillin, Municipal Corporations (3d ed), § 12.43, p 249. Nonetheless, defendants argue that a budgetary shortfall necessitated the refusal to expend the amounts appropriated.

The UBAA and the Detroit City Charter prohibit deficit spending. Both provide specific procedures to ensure that shortfalls do not occur. See *Detroit City Council v Stecher,* 430 Mich 74, 83-85; 421 NW2d 544 (1988), Detroit Charter, § 8-211, and MCL 141.437; MSA 5.3228(37). Defendants have not shown that the procedures were followed.

The majority finds that the facts here are distinguishable from those in *Stecher,* because the appropriation in question was neither altered nor was it the subject of a transfer. As a result, they reason, the formal procedures set forth in the UBAA and the city charter do not come into play. The majority concludes that an appropriation must be altered or the subject of a transfer before the formal procedures of the UBAA or the city charter apply. I find no support in *Stecher* for that proposition.

The UBAA's and city charter's procedures address the roles of both the city council and the mayor in the event a budget deficit is discovered. Their existence precludes a finding that the mayor, acting alone, has the authority to avoid a budgetary shortfall. See *Feld v Robert & Charles Beauty Salon,* 435 Mich 352, 362; 459 NW2d 279 (1990).

The majority's holding that the mayor can act

on his own in refusing to expend appropriated funds is unsupported. I conclude, to the contrary, that the mayor must implement a lawful appropriation of the city council, unless he invokes a legal remedy available to him. Therefore, I would reverse the grant of summary disposition to defendants and affirm the ruling that plaintiffs have standing.