*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WARREN CITY COUNCIL,

        Plaintiff-Counterdefendant-Appellee,

v

JAMES R. FOUTS,

        Defendant-Counterplaintiff-Appellant.

FOR PUBLICATION
December 29, 2022
9:05 a.m.

No. 361288
Macomb Circuit Court
LC No. 2022-000923-AW

Before: CAVANAGH, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

In this budget dispute between plaintiff Warren City Council and its mayor, defendant James R. Fouts, defendant appeals by right the trial court's stipulated order of final judgment in favor of plaintiff. The core issue presented is whether the Warren City Charter ("Charter") permits plaintiff to unilaterally amend the recommended budget from defendant when passing a general appropriations resolution, or whether plaintiff is limited to simply affirming or rejecting the recommended budget as a whole. The trial court concluded that the Charter allowed plaintiff to make amendments to the budget and granted preliminary injunctive and declaratory relief in plaintiff's favor. We affirm those orders, and hold that under normal principles of statutory construction, the Charter does not limit plaintiff to merely affirming or rejecting defendant's recommended budget. Rather, under the Charter, plaintiff may enact any budget so long as it otherwise complies with the law.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In April 2021, in his capacity as mayor, defendant submitted a recommended budget to plaintiff for approval, which included a line item of $615,000 for the City of Warren Downtown Development Authority ("DDA") for "Contractual Services" and a line item of $75,000 for DDA for "Community Promotions." In addition to being mayor, defendant is also the chairperson of the DDA's Board, and the money for the "Contractual Services" line item was for an advertisement campaign called "MI Warren" featuring defendant. Plaintiff met to consider defendant's recommended budget and decided it would revise the budget to allocate $0 for DDA "Contractual Services" and $10,000 for DDA "Community Promotions."

On May 11, 2021, plaintiff adopted a General Appropriations Resolution ("Resolution") for fiscal year 2021-2022 that included the revisions to the DDA projects, as well as a salary increase for the Deputy Council Secretary. Defendant vetoed the resolution, stating that plaintiff did not have the authority to "propose and adopt its own budget" but could only "act upon the budget proposed by the Mayor." Plaintiff unanimously overrode the veto. Defendant nevertheless instructed finance staff to fund the DDA projects in the amounts he originally requested.

On September 15, 2021, the DDA Board approved an expenditure of $310,000 for the "MI Warren" advertising campaign, which was to be funded from the "Contractual Services" and "Community Promotions" budget line items. During the September 15 meeting, the DDA Board discussed the budget dispute and the following exchange was memorialized in the meeting minutes:

> Mr. Fox then stated how council eliminated funding for the recently proposed budget immensely and how once again there is a conflict. The Mayor proposed a budget of $615,000.00 in contractual services for DDA and council cut it to zero. He also proposed $75,000.00 for community promotion and council cut it to $10,000.00.
>
> The Mayor has decided that we are going to move forward with his budget until a compromise is agreed upon. Mayor Fouts stated that he met with Ms. Moore to try and avoid costly litigation. This is the first time in history that City Council has sued the mayor & clerk. This is also the first time in history that council has fired the city attorney on their own accord and hired an outside law firm to act as the city attorney, both of which are a violation of the city charter.
>
> Mr. Vicari asked if any of the line items on the proposed budget were the same as past budgets. Mr. Fox stated that most of them are the same or similar. An example would be contractual services, last year the budget was $500,000.00 and this year we are requesting $615,000.00. Community promotion was $75,000.00 last year and the same amount was requested for this year. There is nothing strange or out of the ordinary in the new proposed budget.
>
> The Mayor stated that he is willing to compromise, but unfortunately council is not willing to do so. Some members refuse to even meet with him to discuss the matter.

According to plaintiff, as of January 31, 2022, the DDA "spent $180,266.90 in unappropriated funds and a total of $302,593.98 had been encumbered for 'Contractual Services' and $60,000 for 'Community Promotions.' "

On March 3, 2022, plaintiff filed a verified complaint seeking a writ of mandamus, declaratory judgment, and injunctive relief. Plaintiff alleged defendant's actions violated the Charter, the Uniform Budgeting and Accounting Act, MCL 141.421a *et seq.* ("UBAA"), and the recodified tax increment financing act, MCL 125.4101 *et seq.* ("RTIFA"). Plaintiff sought a ruling in its favor regarding its powers under the Charter and an order enjoining defendant's further expenditure of unappropriated money.

Plaintiff also moved for a temporary restraining order and preliminary injunction. Plaintiff claimed it would suffer irreparable harm in the absence of an injunction because it was likely no money already expended could ever be recouped, thereby causing injury to plaintiff and residents of the City of Warren. Plaintiff also argued that the public interest would be served by granting an injunction because the public had a "fundamental interest in having its elected officials operate within the confines of the law . . . ." In response, defendant argued that injunctive relief was not warranted because plaintiff was unlikely to prevail on its claims because under the Charter, plaintiff's role in the budget process was limited to reviewing and then approving or disapproving defendant's recommended budget. According to defendant, under *Detroit City Council v Stecher*, 430 Mich 74; 421 NW2d 544 (1988), the Charter did not grant plaintiff the authority to amend the budget. Defendant also argued that plaintiff was unlikely to succeed on its mandamus claim because plaintiff did not identify a clear legal right it possessed different from that owed to the citizenry at large and did not identify a clear legal duty owed by defendant.

The trial court held a hearing on plaintiff's motion on March 28, 2022. Plaintiff argued the case was nearly identical with *Zelenko v Burton City Council*, unpublished per curiam opinion of the Court of Appeals, issued May 15, 2018 (Docket No. 339746),[1] a case in which this Court sided with the defendant-city council after a budget dispute with the plaintiff-mayor in which the Court concluded the defendant could amend the plaintiff's proposed budget. Defendant argued, however, that *Zelenko* was wrongly decided and the language of the charter at issue was different than the Charter.

On March 31, 2022, the trial court issued a written opinion and order granting plaintiff's motion for preliminary injunction. The court found *Zelenko* to be persuasive, stating:

> The procedure for the annual budget in *Zalenko* [sic] is similar to the procedure in this case. In *Zalenko* [sic], the city charter required department heads to submit statements of financial needs and anticipated revenues to the mayor by February 1, and the mayor assembles the statements and prepares a proposed budget. *Id*. The mayor then submits the proposed annual budget to the city council. *Id*. The city council "shall, by resolution, adopt a budget for the ensuing fiscal year" at a regular meeting. *Id*. ( emphasis added).
>
> The *Zalenko* [sic] Court noted that the Burton city charter was silent on the issue of whether the city council had authority to amend the mayor's proposed budget before adopting it. *Id*. at slip op. 2. However, the *Zalenko* [sic] Court looked to the plain language of the charter to determine the drafter's intention. *Id*. The *Zalenko* [sic] Court focused on the language of the charter which directed the city council to "adopt a budget . . ." *Id*. (emphasis added). The *Zalenko* [sic] Court determined that the use of the word "a" instead of "the" "suggested that the council is not limited to adopting the budget proposal submitted by the mayor." *Id*. "By the same token, if the city council is authorized to adopt a budget but is not

---

[1] Unpublished opinions are not binding on this Court but may be considered for their persuasive value. *Eddington v Torrez*, 311 Mich App 198, 203; 874 NW2d 394 (2015), lv den 498 Mich 951 (2015).

restricted to consideration of the mayor's budget proposal, we can infer that the city council may alter or amend the mayor's budget proposal as long as the approved budget otherwise complied with local and state law." *Id.*

In addition, the trial court found *Stecher* to be distinguishable because that case dealt with the issue of " 'whether the Detroit City Council had the authority to unilaterally amend a previously adopted budget in the middle of the fiscal year, rather than a budget proposal that had not yet been passed.' " Thus, the court concluded plaintiff was likely to succeed on the merits of its declaratory judgment claim because "the clear and unambiguous language of the Charter does not limit the City Council to adopting the recommended budget of Fouts. Therefore, the City Council may alter or amend Fouts' recommended budget as long as the approved budget otherwise complies with local and state law."

The trial court also concluded that plaintiff was likely to succeed on the merits of its mandamus claim:

> The Charter requires Fouts to perform all acts required by law and that money is not to be drawn from the treasury of the city except in accordance with an appropriation. These acts are ministerial and are not within Fouts [sic] discretion. Further, the Court finds that the City Council presents sufficient evidence that it does not have another adequate remedy. Thus, without definitively deciding the merits of the City Council's claim for a writ of mandamus, the Court finds that the City Council has presents [sic] sufficient evidence that it is likely to prevail.

The court determined that plaintiff would suffer irreparable harm in the absence of an injunction because "[t]he continued spending of funds that are alleged to be improperly appropriated will result in the funds not being able to be used for other, approved upon, purposes" and "it is likely that any funds improperly spent will never be recovered." Lastly, the court concluded that "balancing the hardships weighs in favor of granting the preliminary injunction" and "it is in the public interest to grant the injunction." The court, therefore, enjoined defendant from authorizing the expenditure of City of Warren funds that have not been appropriated by the City Council."

After entering the order, defendant filed an emergency motion for entry of declaratory judgment under MCR 2.605. In the motion, defendant argued that the Charter did not give plaintiff the power to unilaterally amend his budget. In the section of the Charter in which it states that plaintiff is to pass "a" budget, defendant argued that should not be read as the power to pass any budget. According to defendant, if plaintiff's interpretation of the Charter were correct, § 8.4 of the Charter, which governs public notice, would be nugatory. Plaintiff's interpretation would also give the council unchecked legislative power, which violates principles of checks and balances.

In response, plaintiff argued that declaratory judgment in its favor was warranted because the Charter, UBAA, and RTIFA all permitted plaintiff to consider and amend defendant's proposed budget. Plaintiff asserted that its interpretation would not violate checks and balances, nor would its interpretation render the public notice section of the Charter nugatory, because any action plaintiff took would be done in public at a meeting. Plaintiff urged the trial court to follow the Court's reasoning in *Zelenko*, which it claimed was dispositive of the issues in this case.

The trial court held a hearing on defendant's motion on April 13, 2022, and took the motion under advisement. On April 21, 2022, the court issued a written opinion and order granting declaratory judgment in plaintiff's favor. The court stated:

> The Court finds that *Zalenko* [sic] is persuasive authority and the same rationale be used in this case. Further, while the language contained in the Macomb County Charter in *Macomb Co*[2] is not identical to the language in the Charter in this case, *Macomb Co* provides further authority for the Court to side with the City Council. In this case, Fouts argues that the term "a budget" as used in Section 8 5 of the Charter refers to his recommended budget. However, this argument is unconvincing. The Charter states "the budget" when referring to the Mayor's recommended budget and then switches to "a budget" in Section 8.5. Further, while Fouts argues that allowing the City Council to amend the budget would make the public hearing nugatory, the public hearing allows the City Council to take into consideration the Mayor's recommended budget and the input from the public to determine whether amendments should be made. Lastly, this case is differentiated from *Stecher* since *Stecher* involved adopting a budget in the middle of the fiscal year rather than a budget proposal that has not yet been adopted.
>
> Thus, the Court finds that the language of the Charter is clear and unambiguous and does not limit the City Council to merely adopt or reject the budget proposal submitted by the Mayor. Therefore, since the City Council has authority to adopt a budget but is not restricted to consideration of the Mayor's proposed budget, the City Council may alter or amend the Mayor's budget proposal as long as the approved budget otherwise complies with local and state law. As in *Macomb Co*, the parties do not dispute that Fouts has authority to veto the budget. Consequently, the Court grants declaratory relief in favor of the City Council.

The trial court ordered that plaintiff "has authority to amend the Mayor's proposed budget prior to passing an appropriations resolution"; defendant "must comply with the City Charter and all other local and state laws"; "must perform all of his duties under the provisions of the Charter"; and "must take all actions necessary to cease further disbursement of unappropriated funds." On May 3, 2022, the trial court entered a stipulated order of final judgment clarifying that the trial court granted plaintiff "the relief sought in its Verified Complaint for the reasons stated in this Court's April 21, 2022 Opinion and Order, resolving the last dispute between the parties in this action." This appeal followed.

## II. STANDARDS OF REVIEW

"Questions of law relative to declaratory judgment actions are reviewed de novo, but the trial court's decision to grant or deny declaratory relief is reviewed for an abuse of discretion." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 376; 836 NW2d 257 (2013). This Court also reviews the trial court's decision to grant injunctive relief for an abuse of discretion. *Moore*

---

[2] *Macomb Co Prosecutor v Macomb Co Executive*, ___ Mich App ___; ___ NW2d ___ (Docket No. 359887).

*v Genesee Co*, 337 Mich App 723, 731; 976 NW2d 921 (2021). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Komendat v Gifford*, 334 Mich App 138, 159 n 10; 964 NW2d 75 (2020).

This Court reviews questions of the proper interpretation of a statute de novo. *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 457; 965 NW2d 232 (2020). The interpretation of a city charter is also a question of law this Court reviews de novo. *Barrow v Detroit Election Comm*, 301 Mich App 404, 411; 836 NW2d 498 (2013).

## III. DISCUSSION

Defendant first contends that the trial court erroneously concluded that plaintiff was entitled to amend his proposed budget. According to defendant, plaintiff may only vote up or down on the budget. If plaintiff does not approve the budget, defendant contends that he must go back to the drawing board and submit a new budget until the parties agree. Defendant's interpretation of the Charter is without support, and we conclude that plaintiff was entitled to amend defendant's budget.

This Court's goal with respect to statutory interpretation is to determine and give effect to the intent of the Legislature. *Bonner v Brighton*, 495 Mich 209, 222; 848 NW2d 380 (2014). "When the words used in a statute or an ordinance are clear and unambiguous, they express the intent of the legislative body and must be enforced as written." *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 137; 892 NW2d 33 (2016). This Court "must assign every word or phrase its plain and ordinary meaning unless the Legislature has provided specific definitions or has used technical terms that have acquired a peculiar and appropriate meaning in the law." *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014). When reviewing a municipal charter, this Court "appl[ies] the same rules [it] appl[ies] to the construction of statutes. The provisions are to be read in context, with the plain and ordinary meaning given to every word. Judicial construction is not permitted when the language is clear and unambiguous." *Barrow v Detroit Election Comm*, 305 Mich App 649, 663; 854 NW2d 489 (2014) (quotation marks and citation omitted).

Chapter 8 of the Charter governs budgets for the City of Warren. The fiscal year for the city begins on the first day of July each year. Warren Charter, § 8.1. Under the Charter, "not later than the second Monday in April of each year [the mayor] shall submit to the council a recommended budget for the next fiscal year which is within the tax limit and other revenue sources of the city." Warren Charter, § 8.2. "The recommended budget of the mayor together with his supporting schedules, information, and messages, shall be reviewed by the council. The budget proposal of the mayor, together with his recommendations and its supporting schedules and information shall become a public record . . . ." Warren Charter, § 8.3.

"A public hearing on the budget shall be held not less than one week before its final adoption at such time as the council shall direct." Warren Charter, § 8.4. Once the public hearing is held, plaintiff may act on the proposed budget:

> (a) Not later than the third Monday in May of each year, the council shall, by resolution, *adopt a budget* for the ensuing fiscal year and make an appropriation

of the money needed therefor. Such resolution shall designate the sum to be raised by taxation for the general purposes of the city and for the payments of principal and interest on its indebtedness. Failure to adopt such resolution within the time herein set shall not invalidate either the budget or the tax levy therefor. [Warren Charter, § 8.5(a) (emphasis added).]

In *Zelenko*, this Court affirmed the order of the trial court denying the plaintiff-mayor's request for a writ of mandamus after the defendant-council amended the plaintiff's budget before adopting it. *Zelenko*, unpub op at 1. The Court described the relevant budget process as follows:

the department heads submit statements of financial need and anticipated revenues to the mayor by February 1, and the mayor assembles the statements and prepares a budget proposal. The mayor submits "the annual budget proposal of the city" to the city council at the council's first regular meeting in April. The city council "shall, by resolution, adopt a budget for the ensuing fiscal year" at a regular meeting held no later than the second Monday in June. [*Id*. at 2.]

The Court rejected the plaintiff's argument that because the charter was silent on whether the defendant could amend the budget, the defendant was without such power. *Id*. Instead, the Court analyzed the language of the Charter and concluded that it permitted amendment:

The use of an indefinite article in referring to the city council's authority to "adopt a budget" suggests that the council is not limited to adopting the budget proposal submitted by the mayor. By the same token, if the city council is authorized to adopt a budget but is not restricted to consideration of the mayor's budget proposal, we can infer that the city council may alter or amend the mayor's budget proposal as long as the approved budget otherwise complies with local and state law. [*Id*.]

The Court also rejected the plaintiff's argument that the case was controlled by *Detroit City Council v Stecher*, 430 Mich 74; 421 NW2d 544 (1988), in which the Michigan Supreme Court rejected the attempt by the city council to make an amendment to the mayor's budget, distinguishing that case on the basis that the mid-year amendment was to a previously passed budget. *Id*. Thus, the Court concluded that the trial court did not abuse its discretion when it denied the defendant's request for writ of mandamus. *Id*. at 3.

*Zelenko* is more persuasive than *Stecher*, despite it being unpublished, because the facts are nearly identical and it informs the outcome of this case. We therefore adopt the reasoning in *Zelenko* as our own. As in *Zelenko*, the Charter provides that the mayor is to develop and prepare a budget for presentation to the city council. And like *Zelenko*, in which the Burton City Charter authorized the city council to pass "a" budget, the Charter likewise authorizes plaintiff to "*adopt a budget* for the ensuing fiscal year and make an appropriation of the money needed therefor." Warren Charter, § 8.5(a) (emphasis added). Thus, we find persuasive our reasoning in *Zelenko* that the Charter's use of the indefinite article "a" suggests that plaintiff is not limited to only approving or disapproving defendant's proposed budget. Rather, plaintiff is empowered to pass any budget so long as it otherwise complies with the law. See *Zelenko*, unpub op at 2.

Defendant contends, however, that because *Zelenko* is not binding authority this Court should follow *Stecher* and conclude that plaintiff was not permitted to amend defendant's budget. In *Stecher*, the mayor submitted mid-year budget proposals to the plaintiff-council in an effort to balance the budget in accordance with the UBAA. *Stecher*, 430 Mich at 78. The plaintiff made amendments to the budget, which the mayor rejected. *Id*. Plaintiff then brought suit for a writ of mandamus against the defendant-budget director to direct him to make the budget amendments. *Id*. at 79.

The Michigan Supreme Court reversed this Court's opinion affirming the trial court's order in favor of the plaintiff because the Detroit City Charter did not authorize the plaintiff to make mid-year budget amendments:

> Section 8-211 allows the council to make transfers of appropriations during the fiscal year "upon written request by the mayor." This power is distinguished from that of the council during the initial budget adoption process when the council has the power to adopt the budget proposals submitted by the mayor "with or without amendment." Section 8–207. During the fiscal year the council is limited to responding to specific written requests from the mayor. There is no authorization in the charter for the council to initiate its own budget amendment proposals or to amend those submitted by the mayor. [*Stecher*, 430 Mich at 83.]

In our view, while *Stecher* provides some support for defendant's argument that plaintiff was not entitled to amend the budget, the reasoning in *Zelenko* as to why *Stecher* does not apply to the case is equally true here. The issue in *Stecher* was whether the plaintiff could amend a mid-year budget proposal submitted by the mayor in a circumstance where the city charter vested the responsibility for such proposal with the mayor. As such, the outcome of that case was dependent upon the language of the charter at issue and its interplay with the mid-year budget process.

In this case, the Charter requires that defendant prepare and submit a proposed budget to plaintiff. On the basis of the plain language of the Charter, plaintiff is required only to pass "a" budget, not "the" budget. As this Court stated in *Zelenko*, this language strongly suggests that plaintiff is not limited to approving or rejecting defendant's budget, but rather is empowered to pass any budget that otherwise complies with the law.

We find further support for plaintiff's position from this Court's recent decision in *Macomb Co Prosecutor v Macomb Co Executive*, ___ Mich App ___; ___ NW2d ___ (Docket No. 359887). There, this Court addressed whether the Macomb County Board of Commissioners had authority under the County Charter "to appropriate more funds for a line item than that contained in the [Macomb County] Executive's proposed budget." *Macomb Co Prosecutor*, ___ Mich App at ___; slip op at 7. In concluding that the Board had authority to adopt an independent budget, this Court relied on language in the County Charter providing the Executive with authority to submit "a *proposed* annual budget" and a budget "*recommended* by the Executive." *Id*. at 9. This Court summarized the budgetary scheme as follows: "the County Charter creates a scheme whereby the budgetary process is initiated by the Executive through issuance of a recommended budget, and then the Board has the final authority to appropriate funds—subject, of course, to the veto power of the Executive." *Id*. The Warren City Charter provides for a similar system. The Charter describes the budget submitted by defendant to plaintiff as "a recommended budget", Warren

Charter § 8.2, and a "budget proposal," Warren Charter, § 8.3. Plaintiff must review defendant's recommended budget and then "adopt *a* budget" for the next fiscal year. Warren Charter, §§ 8.3, 8.5(a) (emphasis added). Consistent with *Macomb Co Prosecutor*, plaintiff possesses the authority under the Charter to amend defendant's recommended budget and adopt an independent budget.

Because plaintiff was within its rights to reject defendant's budget and pass its own, plaintiff acted lawfully when it did not appropriate money to the "Contractual Services" line item, or when it reduced the "Community Promotions" line item from $75,000 to $10,000. Conversely, after plaintiff passed the resolution adopting the budget, defendant was not entitled to proceed with his own budget as if it had been passed by plaintiff. Indeed, during the litigation, defendant has taken contradictory views on what he was authorized to do after plaintiff rejected his proposed budget. At times, defendant suggests that once plaintiff rejected his budget, defendant was obligated to return to plaintiff with a new budget for its consideration. Other times, defendant suggests that he was entitled to proceed with his budget without having to return to plaintiff. In any case, neither of defendant's arguments are persuasive. Defendant was obligated to only authorize spending money that was appropriated by plaintiff.

In sum, the trial court correctly determined that plaintiff was free to amend defendant's proposed budget. Accordingly, the trial court did not abuse its discretion when it granted declaratory judgment in plaintiff's favor.

Next, defendant contends that the trial court abused its discretion when it granted plaintiff's motion for preliminary injunction because plaintiff was unlikely to prevail on the merits. Specifically, defendant argues that the Charter does not permit plaintiff to amend the budget, and asserts that mandamus is improper because plaintiff has not identified a clear legal right or duty applicable to the parties. We disagree.

As explained above, the trial court did not abuse its discretion because plaintiff was likely to prevail on the merits of its declaratory judgment claim. The Charter permits plaintiff to amend defendant's proposed budget. In addition, the trial court did not abuse its discretion when it concluded that plaintiff was likely to prevail on its mandamus claim.

A writ of mandamus is an "extraordinary remedy." *Citizens for Protection of Marriage v Bd of State Canvassers*, 263 Mich App 487, 492; 688 NW2d 538 (2004). The purpose of a writ of mandamus is to compel action by a public official. *Attorney General v Bd of State Canvassers*, 318 Mich App 242, 248; 896 NW2d 485 (2016), app withdrawn 500 Mich 907 (2016). A writ of mandamus is proper if the party seeking the writ can meet the following requirements:

> (1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial, and (4) no other remedy exists that might achieve the same result. [*Id*. (quotation marks and citation omitted).]

"Within the meaning of the rule of mandamus, a 'clear, legal right' is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided." *O'Connell v Dir of Elections*, 317

Mich App 82, 91; 894 NW2d 113 (2016). A clear legal duty is a statutory obligation imposed on a public official to perform a specific act. *Casco Twp v Secretary of State*, 472 Mich 566, 577; 701 NW2d 102 (2005); see also *People v Parlovecchio*, 319 Mich App 237, 242; 900 NW2d 356 (2017) ("[T]he legal duty cannot rest solely on a contractual obligation."). "A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 58 n 11; 832 NW2d 728 (2013) (quotation marks and citation omitted).

Plaintiff alleged it had a clear legal right to have defendant act in accordance with the Charter and Michigan law. Implicit in this allegation is the right to have plaintiff's prerogatives as the legislative body protected from encroachment by the executive. The Charter gives to plaintiff the power to appropriate money; thus, plaintiff had the clear legal right to be the only governing entity within Warren that could do so.

Defendant also had a clear legal duty to comply with the law by authorizing only those expenditures that were first approved by plaintiff. Contrary to defendant's assertion, this is not a generalized duty that is held by the public at large. Defendant's role as mayor is set forth in the Charter, which provides in relevant part that "no money shall be drawn from the treasury of the city, except in accordance with an appropriation for such purpose, nor shall any obligation for the expenditure of money be incurred without an appropriation covering all payments which will be due under such obligation during the fiscal year." Warren Charter, § 8.6(a). This is a specific duty that instructs defendant when he can and cannot spend money.

Lastly, the legal duties that defendant was required to comply with were ministerial in nature in that they required defendant to follow the expenditure rules in the Charter. Contrary to defendant's suggestion, there is no discretion in determining whether money has been appropriated for a particular program or project. Plaintiff either appropriated the money or it did not. If the money is appropriated, defendant is authorized to spend it. If the money is not appropriated, he is not so authorized.

Affirmed. Plaintiff, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett